2012 WY 67

**Alfred Lee BALDES, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–11–0168.**

Supreme Court of Wyoming.

May 15, 2012.

Representing Appellant: David Hooper and Katherine A. Strike, of Hooper–Strike Law Offices, LLC, Lander, WY. Argument by Ms. Strike.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Amitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Prosecution Assistance Program; Joshua B. Taylor, Student Director; and Gregory Asay, Student Intern. Argument by Mr. Asay.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Alfred Lee Baldes (Baldes) appeals his conviction of two counts of third-degree sexual assault, contending insufficiency of the evidence and improper admission of W.R.E. 404(b) evidence. We affirm.

## ISSUES

[¶ 2] Baldes presents the following two issues:

1. Whether the evidence presented at trial was insufficient to sustain Alfred Baldes' conviction, specifically there was insufficient evidence to prove that Mr. Baldes was in a position of authority and that sexual contact occurred, as required by W.S. § 6–2–303(a)(vi) and W.S. § 6–2–304(a)(iii), respectively.

2. Whether the trial court erred and abused its discretion when, following an improper *Gleason* analysis, it allowed the introduction of W.R.E. 404(b) evidence, specifically the testimony of J.G., which was ultimately not offered for its proper purpose by the State.

## FACTS

[¶ 3] Baldes was hired by Amedisys Home Healthcare in August of 2009 as a certified nursing assistant (CNA). One of the clients served by Amedisys was K.S., recently deceased, a young man who suffered from Duchenne's muscular dystrophy, a progressive muscle-weakening disease. K.S. was confined to a wheelchair and was unable to independently perform many basic daily tasks due to his disability. K.S. became a client of Amedisys in 2006, and Amedisys developed an individualized care plan with K.S. to provide the services he needed and specifically requested, including getting him out of bed in the morning, brushing his teeth, bathing him, washing his hair, and shaving him. Despite his physical infirmities, K.S. exhibited no deficiencies in his mental faculties: He graduated from high school, held a job at the local movie theater, and testified on his own behalf at trial.

[¶ 4] Baldes was assigned to care for K.S. just after joining Amedisys in August of 2009. Three days a week, as directed in K.S.'s care plan, Baldes gave K.S. a sponge bath, which included washing K.S.'s genitalia, perineum, and anal area. In mid-January of 2010, approximately five months after Baldes began working with K.S., Amedisys and law enforcement received a report alleging sexual abuse of K.S. by Baldes while Baldes was bathing K.S.

[¶ 5] Baldes was charged with four counts of third-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a) (LexisNexis 2011), which provides:

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

(i) and (ii) Repealed by Laws 2007, ch. 159 § 3.

(iii) The actor subjects a victim to sexual contact under any of the circumstances of W.S. 6–2–302(a)(i) through (iv) or 6–2–303(a)(i) through (vii) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

"Sexual contact" is defined by statute as "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the cloth-

ing covering the immediate area of the victim's or actor's intimate parts." Wyo. Stat. Ann. § 6–2–301(a)(vi) (LexisNexis 2011). Baldes was charged with sexual assaults committed under the statutory circumstances set forth in Wyo. Stat. Ann. § 6–2–303(a)(vi) (LexisNexis 2011): "The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit." The term "position of authority" is defined in Wyo. Stat. Ann. § 6–2–301(a)(iv) (LexisNexis 2011) to mean "that position occupied by a parent, guardian, relative, household member, teacher, employer, custodian or any other person who, by reason of his position, is able to exercise significant influence over a person."

[¶ 6] Two of the four counts were eventually dismissed, and Baldes was tried on two counts of sexual assault in the third degree. The jury convicted him on both counts. This appeal followed.

## DISCUSSION

### Sufficiency of the Evidence

[¶ 7] In his first issue, Baldes contends that the State produced insufficient evidence to prove that he stood in a "position of authority" with respect to K.S. as contemplated by § 6–2–301(a)(iv). Additionally, he argues that the State presented insufficient evidence to support the jury's finding that he had sexual contact with K.S., as defined by § 6–2–304(a)(iii). The State contends that the testimony presented by its witnesses was sufficient for the jury to conclude beyond a reasonable doubt that Baldes occupied a position of authority and had sexual contact with K.S.

[¶ 8] When reviewing an appellant's claims regarding sufficiency of the evidence, this Court examines the evidence in the light most favorable to the State. *Faubion v. State,* 2010 WY 79, ¶ 12, 233 P.3d 926, 929 (Wyo.2010). We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We disregard any evidence favorable to the appellant that conflicts with the State's evidence. *Id.*

### Position of Authority

[¶ 9] " 'Position of authority' means that position occupied by a parent, guardian, relative, household member, teacher, employer, custodian or any other person who, by reason of his position, is able to exercise significant influence over a person." § 6–2–301(a)(iv). Baldes did not hold one of the specific positions of authority delineated in the statute, and the State prosecuted him as "any other person who, by reason of his position, is able to exercise significant influence over a person." Baldes argues that, as a certified nurse assistant, he was not in a position of authority and did not have significant influence over K.S. Rather, he was subordinate both to the registered nurses who supervised him and to K.S., who directed and controlled his own care.

[¶ 10] This Court most recently addressed the "position of authority" provision in *Faubion.* In contemplating the plain meaning of the term, we reviewed some general definitions:

It is helpful to look to Burton's Legal Thesaurus, which defines authority as: "[J]urisdiction, legal power, legitimacy, prerogative, right to adjudicate, right to command, right to determine, right to settle issues, rightful power." Black's Law Dictionary, 5th ed. (1979) defines authority as: "Permission. Right to exercise powers; to implement and enforce laws; to exact obedience; to command; to judge. Control over; jurisdiction. Often synonymous with power."

. . . .

From these sources it is apparent that the legislature used the word 'authority' to mean an externally granted power, not a self-generated control. One in a position of authority is a person who acquires that status by virtue of society and its system of laws granting to him the right of control over another.

*Id.* ¶ 17, 233 P.3d at 930 (quoting *Scadden v. State,* 732 P.2d 1036, 1042–43 (Wyo.1987)).

[¶ 11] In *Faubion,* we applied the aforementioned concepts in determining that a chiropractor held a position of authority, rea-

soning that chiropractic practice is governed by statute, there is a fiduciary or trust relationship between a patient and his healers, and chiropractors govern themselves by a variety of ethical codes. *Id.* ¶ 18, 233 P.3d at 931. Although there are distinct differences between the job duties of a chiropractor and a certified nurse assistant, when we focus on the power and control aspects of those positions with respect to the clients or patients they serve, the same reasoning applies. Power differentials exist in professional situations in which a service provider has knowledge, experience, and authority that the client seeks and needs from the provider. In a situation involving a provider of medical services, a client may be rendered exceptionally vulnerable by the nature of the illness or disability for which he seeks services.

[¶ 12] Here, the jury heard testimony from the Amedisys nurse manager, a registered nurse, that CNAs are subject to state statutes and ethical codes in their dealings with patients. She explained to the jury that the position of CNA requires training, education, and certification through the State Board of Nursing, and that Baldes was a certified CNA. Evidence was presented describing Baldes' numerous responsibilities and the intimate services he provided as a CNA for K.S., including getting K.S. out of bed, bathing him, washing his hair, brushing his teeth, shaving him, dressing him, and putting him in his wheelchair. Baldes was given access to K.S.' home and all of his personal effects. He often had unsupervised access to K.S. The fact that Baldes was subordinate to and supervised by registered nurses does not vitiate the relationship of trust he held with respect to K.S., and the power arising from that relationship. K.S. sought and needed specific nursing services. He depended upon trained medical services providers—CNAs—to perform those services properly and appropriately. But for Baldes' certification as a CNA, he would not have had access to K.S., nor been able to command the trust and reliance that allowed him to exert a measure of control over K.S. Applying our standard of review to the evidence presented to the jury, we are satisfied that the jury could reasonably conclude Baldes, as a CNA, occupied a position of authority over K.S.

*Sexual Contact*

[¶ 13] Baldes also challenges the sufficiency of the evidence to prove "sexual contact" with K.S., as defined by § 6–2–301(a)(vi). Specifically, Baldes contends that the State failed to prove that he touched K.S. with "the intention of sexual arousal, gratification or abuse."

■ [¶ 14] The evidence showed that, for approximately five years, K.S. relied upon registered nurses and CNAs other than Baldes to bathe him. K.S. testified that he had been assigned both male and female aides and was well aware of appropriate bathing procedures. K.S. could tell the difference between someone touching his genitalia merely to bathe him and someone touching him inappropriately. Both the Amedisys nurse manager and Baldes' CNA mentor described the proper procedures for giving a sponge bath and cleaning the perineum area. The State presented evidence to the jury that Baldes did not follow, or quit following, proper procedures when bathing K.S. At some point during the time he cared for K.S., Baldes quit covering up K.S. during his sponge baths and left K.S. exposed during the whole process. Baldes also quit wearing gloves and began contacting K.S.'s penis with his bare hands. K.S. testified that Baldes massaged the tip of his penis in a circular motion with his thumb while he was bathing him. At least twice when K.S. was lying on his side, Baldes reached between K.S.'s legs, pulled his penis through his legs toward his back, and moved his hand up and down on it. These breaches of procedure, viewed in the light most favorable to the State and in the context in which they occurred—washing K.S.'s intimate parts—indicate a disregard for nurse-patient boundaries and sexualization of the bathing process. The evidence was sufficient for a reasonable juror to conclude that Baldes touched K.S. with the intention of sexual arousal or gratification.

*W.R.E. 404(b) Evidence*

[¶ 15] Baldes' second issue involves the trial court's ruling on W.R.E. 404(b) evi-

dence. "Generally, the standard of review of rulings under W.R.E. 404(b) is abuse of discretion." *Gleason v. State,* 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). The reviewing court should give considerable deference to the trial court's decision on the admissibility of evidence. *Vigil v. State,* 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo.2010). "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State,* 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006).

[¶ 16]   In *Gleason* we addressed the difficulties with Rule 404(b) evidence:

> [B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Vigil,* 926 P.2d at 357 (quoting *United States v. Herndon,* 982 F.2d 1411, 1414 (10th Cir.1992)). We do not apply this test on appeal; rather, it is intended to be conducted by the trial court. *Beintema v. State,* 936 P.2d 1221, 1224 (Wyo.1997). Our role is to determine whether admission of the evidence was error. *Id.; Spencer v. State,* 925 P.2d 994, 997 (Wyo.1996).

*Id.* ¶ 18, 57 P.3d at 332, 340 (footnote omitted). We made clear that the trial court's analysis of admissibility is to be reflected in the record. *Id.* ¶ 30, 57 P.3d at 343.

*Gleason Analysis*

[¶ 17]   Baldes argues that the trial court did an improper or insufficient *Gleason* analysis prior to allowing the testimony of K.S., the victim in this matter, as well as L.N. and J.G., two other clients of Baldes'. Baldes contends that the allegations of prior bad acts were different for all three of the aforementioned individuals, but the court considered all three witnesses together, in one dis-

cussion, and without careful and detailed consideration of the specific evidence that each would be presenting.

■   [¶ 18]   The district court conducted a hearing on the "State's Notice of Intent to Introduce Evidence Pursuant to W.R.E. 404(b)." After hearing argument from the State and Baldes, the district court proceeded with its analysis of the evidence pursuant to *Gleason.* At the outset, the judge stated, "... I'm going to talk about all three first and then differentiate between the three different witnesses...." The district court then conducted what it referred to as its "general *Gleason* analysis."

■   The district court discussed how the proposed testimony indicated a particular mode of operation and a potential motive of sexual gratification, both of which the court found to be proper purposes for admitting the evidence. The court then evaluated the probative value of the evidence considering each of the factors that we set out in *Gleason:*

1.  How clear is it that the defendant committed the prior bad act?
2.  Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
3.  Is other evidence available?
4.  Is the evidence unnecessarily cumulative?
5.  How much time has elapsed between the charged crime and the prior bad act?

*Id.* ¶ 27, 57 P.3d at 342. Based upon its analysis, the court determined the proposed testimony probative of the issue of whether Baldes committed sexual assault. The district court then turned to the issue of whether the evidence was more prejudicial than probative, again following the guidelines we set out in *Gleason:* (1) The reprehensible nature of the prior bad act; (2) The sympathetic character of the alleged victim of the prior bad act; (3) The similarity between the charged crime and the prior bad act; (4) The comparative enormity of the charged crime and the prior bad act; (5) The comparable relevance of the prior bad act to the proper and forbidden inferences; and (6) Whether the prior act resulted in a conviction. *Id.*

¶ 27, 57 P.3d at 342–43. Balancing those factors, the court determined that the probative value of the proposed testimony outweighed its prejudicial effect.

[¶ 20] With that background, the district court considered the proposed prior bad act evidence that was to be offered by each witness and differentiating between them. The record plainly demonstrates that in addition to considering the *Gleason* factors as they applied to the testimony of all three witnesses, the trial court analyzed the unique aspects of the proposed prior bad act testimony of each witness. The court ultimately allowed K.S. and J.G. to testify and disallowed the testimony of L.N. explaining its rationale for each of those decisions.

[¶ 21] The district court's thorough analysis of the evidence fully satisfies the requirements of *Gleason* and indicates a legitimate basis for its rulings. We will not disturb those rulings on appeal.

### *Purpose Served*

[¶ 22] At the Rule 404(b) hearing the district court ruled that it would allow the prior bad act testimony of J.G., one of Baldes' clients, for the purpose of proving motive and modus operandi. The court described its rationale as follows:

> So in terms of the particular mode of operation and the allegations with respect to how the defendant utilized his position of authority to allegedly commit the crimes with which he is charged, I think, is the proper purpose; and a close part of that is also to prove motive, which is a proper purpose; that his motive here might have been sexual gratification rather than the delivery of proper medical care and procedures.

Baldes avers that J.G.'s testimony was significantly different than the State represented in its notice of intent to introduce evidence pursuant to W.R.E. 404(b). Baldes argues that J.G. did not testify as to facts showing that he experienced similar acts to K.S. to prove modus operandi, and there was no evidence presented by J.G. to show that Baldes was gratified or aroused to prove motive. The State concedes that J.G.'s testimony was not identical to what

the prosecutor expected to present, but that the testimony substantially conformed to the prosecutor's expectations and the purpose for which it was admitted. We agree.

[¶ 23] Like K.S., J.G. testified that he was incapacitated and needed assistance bathing and that Baldes had assisted him. J.G.'s testimony painted a picture of a vulnerable person who, like K.S., had relied upon Amedisys to send trustworthy individuals into his home to help him with simple but quite personal tasks. J.G.'s testimony showed a method of operation similar to that described by K.S.: Baldes used his position of authority and a client's vulnerability to build, then betray, a relationship of trust.

[¶ 24] J.G.'s testimony also tended to show that Baldes' improper conduct was sexually motivated. J.G. testified that a number of CNAs had assisted him over a three-year period and that he had become familiar with the regular procedures followed by the other CNAs when they bathed him. By demonstrating his familiarity with the practices of other CNAs, J.G. showed that he could differentiate between a standard bathing procedure and overt sexual acts. Unlike K.S., J.G. did not testify that Baldes' assault took two to three minutes, or that Baldes did not wear gloves. However, J.G.'s description of the manner in which Baldes washed his intimate parts was similar to K.S.'s description—both used the word masturbate—tending to indicate Baldes' conduct was sexually motivated.

[¶ 25] In sum, J.G.'s testimony, though less detailed than the State expected, served the State's stated purposes of introducing it: to properly prove both Baldes' modus operandi and motive. We uphold the trial court's admission of this evidence.

### CONCLUSION

[¶ 26] This Court concludes that ample evidence was presented to prove that Baldes was in a position of authority over and had sexual contact with the victim, K.S. Furthermore, the district court followed a proper *Gleason* analysis of the proffered Rule 404(b)

evidence, and the evidence served the purpose for which it was admitted. Affirmed.