# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 48

OCTOBER TERM, A.D. 2014

March 27, 2015

JAMES EDWARD ROGERS,

Appellant
(Defendant),

v.

S-14-0057

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*

> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellant Counsel. Argument by Mr. Alden.

*Representing Appellee:*

> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; and Caitlin F. Young, Assistant Attorney General. Argument by Ms. Young.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    A jury convicted James Rogers of first-degree sexual assault and two counts of third-degree sexual abuse of a minor.  Mr. Rogers qualified as a habitual criminal and was thus sentenced to life in prison on the first-degree sexual assault conviction.  He received thirteen- to fifteen-year sentences on the remaining two charges to be served concurrently to each other and to the life sentence.

[¶2]    On appeal, Mr. Rogers claims that he was not in a position of authority, and that he was incorrectly charged.  Furthermore, he argues that his convictions and sentences should have merged and that there was insufficient evidence to sentence him as a habitual offender.

[¶3]    We will affirm.

## ISSUES

[¶4]    Mr. Rogers presents four issues for our review:

> 1.  The relationship alleged between Mr. Rogers and the victim does not constitute a "position of authority." [sic]
>
> 2.  The acts alleged against Mr. Rogers do not constitute a violation of W.S. § 6-2-316(a)(iv) and, alternatively, counts II and III should merge.
>
> 3.  The legislature intended that all three counts should merge into a single crime.
>
> 4.  One prior felony conviction alleged for the purpose of the habitual criminal sentence was not sufficiently proved.

## FACTS

[¶5]    On April 11, 2012, James Rogers visited the home of Kevin and Tammy Long.  Mrs. Long was at work, and Mr. Long needed to run an errand.  When Mr. Long asked Mr. Rogers if he would watch his two children – his nine-year-old son and his sixteen-year-old developmentally disabled daughter, C.W.   Mr. Rogers agreed, and Mr. Long left around 9 p.m.

[¶6]    When Mr. Long left, his son was sleeping in his bedroom.  Consequently, Mr. Rogers and C.W. were left alone in the living room.  Mr. Rogers approached C.W. and began kissing her.  He ran his hand up her leg and touched her vagina, and began sucking

1

on her nipples through her shirt. Mr. Rogers then grabbed C.W. by the wrist, pulled hard and directed her into her bedroom. Once in the bedroom, Mr. Rogers closed the door and turned off the light. He proceeded to take off his pants. He also took off C.W.'s clothes and pushed her onto the bed. Mr. Rogers then inserted his penis into C.W.'s mouth and put his fingers into C.W.'s vagina. Mr. Rogers then licked C.W.'s vagina, and proceeded to have intercourse with her. Afterwards, Mr. Rogers ejaculated on C.W. Mr. Rogers then left the home, and C.W. went to sleep without telling anyone about the incident.

[¶7] The next morning, C.W. became upset at school. C.W. confided in her special education teacher, Katie Turner, that she had been raped the night before and described the events in detail. C.W. reported the incident to the police and was then taken to the hospital where a nurse administered a sexual assault kit.

[¶8] After C.W. named Mr. Rogers, the police contacted him. Mr. Rogers admitted to visiting the Longs' home the night before but claimed he left the home when Mr. Long left. Evidence gathered from C.W., the home, and a DNA sample from Mr. Rogers was submitted to the Wyoming State Crime Lab. There, analysts detected the presence of Mr. Roger's sperm in C.W.'s underwear. An analyst testified at trial that the chances the DNA belonged to someone other than Mr. Rogers were one in 5.02 quintillion.

[¶9] The State immediately filed an Information charging Mr. Rogers with four varying degrees of sexual assault in violation of Wyo. Stat. Ann. §§ 6-2-302(a)(i), 6-2-316(a)(ii), 6-2-303(a)(vi), and 6-2-316(a)(iv). The Information was eventually amended to include habitual offender status, and one of the four original charges was dropped. A jury trial took place, where after the jury convicted Mr. Rogers of all charges against him: one count of first degree sexual assault in violation of Wyo. Stat. Ann.§ 6-2-302(a)(i); one count of third degree sexual abuse of a minor in violation of Wyo. Stat. Ann.§ 6-2-316(a)(ii); and one count of third degree sexual abuse of a minor in violation of Wyo. Stat. Ann.§ 6-2-316(a)(iv).

[¶10] Following the jury trial, the State presented evidence in support of its allegation that Mr. Rogers was a habitual offender under Wyo. Stat. Ann. § 6-10-201. The State's evidence included a 1978 felony arson conviction in Ohio; a 1990 indecent liberties with a minor conviction in Casper, Wyoming; and three 1995 federal felony firearm convictions, all arising from the same incident. In support of these allegations, the State presented documentation and testimony from several individuals. After the State's presentation of evidence, the jury found Mr. Rogers to be a habitual criminal. Thus, the district court sentenced him accordingly: life imprisonment on the first-degree sexual assault charge, and thirteen- to fifteen-year sentences on each third-degree sexual abuse of a minor charge, to be served concurrently to each other, and to the life sentence. This appeal followed.

# DISCUSSION

*Position of Authority*

[¶11]  Mr. Rogers argues on appeal that the relationship between he and the victim, C.W., does not constitute a position of authority under Wyo. Stat. Ann. § 6-2-316(a)(ii). This statute requires that the accused occupy a "position of authority" in relation to the victim.  The State disagrees and contends that because babysitters are tasked with acting in place of a child's parent, and because they have been affirmatively granted the authority to act in the parent's place, they should be considered as occupants of a position of authority.

[¶12]  When reviewing an appellant's claims regarding sufficiency of the evidence, this Court examines the evidence in the light most favorable to the State. *Faubion v. State*, 2010 WY 79, ¶ 12, 233 P.3d 926, 929 (Wyo. 2010).  We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence. *Id*.

[¶13]  Wyo. Stat. Ann. § 6-2-301(a)(iv) (LexisNexis 2013) provides:

> "Position of authority" means that position occupied by a parent, guardian, relative, household member, teacher, employer, **custodian** *or any other person who, by reason of his position, is able to exercise significant influence over a person*[.]  [Emphasis added.]

We have discussed this statute several times and have analyzed what it means to be in a "position of authority."  Most recently, in *Solis v. State*, 2013 WY 152, 315 P.3d 622 (Wyo. 2013), we queried whether a massage therapist holds a position of authority over a client.  There, we concluded that, yes, "a massage therapist may indeed hold a position of authority." *Solis*, ¶ 33, 315 P.3d at 630-31.  We explained:

> According to the victim, she needed the services of a massage therapist, and, to this end, sought out the services of the Appellant. According to the victim's testimony, the Appellant held himself out as one with knowledge, experience and skill in the field of massage therapy. After first disrobing, as she had done in the past for her previous massage therapist, the victim followed the Appellant's every instruction, including shifting the position of her body during the massage therapy session so as to enable him to apply his ministrations. Importantly, the victim testified she completely

3

trusted the Appellant; her previous massage therapist, Ms. Bishop, testified a relationship of trust between a massage therapist and a client is essential to a successful therapy regimen. This scenario clearly satisfies the "power differential" explicated in *Baldes*.

[¶14] While contemplating the plain meaning of "position of authority," we reviewed some general definitions in *Faubion*:

> It is helpful to look to Burton's Legal Thesaurus, which defines authority as: "[J]urisdiction, legal power, legitimacy, prerogative, right to adjudicate, right to command, right to determine, right to settle issues, rightful power." Black's Law Dictionary, 5th ed. (1979) defines authority as: "Permission. Right to exercise powers; to implement and enforce laws; to exact obedience; to command; to judge. Control over; jurisdiction. Often synonymous with power."
>
> From these sources it is apparent that the legislature used the word 'authority' to mean an externally granted power, not a self-generated control. One in a position of authority is a person who acquires that status by virtue of society and its system of laws granting to him the right of control over another.

*Faubion*. ¶ 17, 233 P.3d at 930 (quoting *Scadden v. State*, 732 P.2d 1036, 1042-43 (Wyo. 1987)). In *Faubion*, we applied the aforementioned concepts in determining that a chiropractor held a position of authority, reasoning that chiropractic practice is governed by statute, there is a fiduciary or trust relationship between a patient and his healers, and chiropractors govern themselves by a variety of ethical codes. *Id*. at ¶ 18, 233 P.3d at 931.

[¶15] Similarly, in *Baldes v. State*, 2012 WY 67, 276 P.3d 386 (Wyo. 2012), we concluded that

> [a]lthough there are distinct differences between the job duties of a chiropractor and a certified nurse assistant, when we focus on the power and control aspects of those positions with respect to the clients or patients they serve, the same reasoning applies. Power differentials exist in professional situations in which a service provider has knowledge, experience, and authority that the client seeks and needs from the provider. In a situation involving a provider of medical

4

services, a client may be rendered exceptionally vulnerable by the nature of the illness or disability for which he seeks services.

*Baldes,* ¶ 11, 276 P.3d at 389. However, the "power differential" concept we discussed in *Baldes* was limited to professional situations. Here, there is no professional context. This is a babysitter/charge scenario, but the legislature did not specifically mention babysitter in its list of positions of authority. Yet, the legislature included the term "custodian," and also provided a catchall that includes "any other person who, by reason of his position is able to exercise significant influence over a person." Wyo. Stat. Ann. § 6-2-301(a)(iv) (LexisNexis 2013). We will explore both of those terms.

[¶16] "Custodian" is defined as a "person, institution or agency responsible for the child's welfare and having legal custody of a child by court order, or having actual physical custody and control of a child and acting in loco parentis." Wyo. Stat. Ann. § 14-3-402(a)(vii) (LexisNexis 2013). This definition is provided within the context of our child protection statutes, however, and not included in the context of the sexual assault statutes. Nevertheless, this definition would clearly imply that an individual serving as a babysitter is a custodian of a minor and thus in a position of authority. Other jurisdictions have considered babysitters to hold obvious positions of authority. *State v. Skinner*, 450 N.W.2d 648, 654 (Minn. App. 1990) (concluding that babysitter was in position of authority); *State v. Stephens,* 525 S.E.2d 301, 304 (W.Va. 1999) (an individual serving as the babysitter for one or more children occupies a position of authority over that child or children); *Rasmussen v. State*, 2009 Ark. App. 586, *1 (Ark. App. 2009) ("… a family friend to whom a minor is entrusted in the capacity of babysitter or chaperone is in a position of authority or trust over that minor during the time of entrustment. We think the evidence of appellant's close friendship with the victim's parents, and of their frequent entrustment of the victim to appellant's care and supervision, was sufficient to support the finding that appellant was a temporary caretaker or in a position of trust over the victim.") (citation omitted).

[¶17] Here, Mr. Rogers was left in charge of the children while their father went to collect a paycheck. It does not matter for how long he was left with the children or whether he was paid. Mr. Rogers clearly occupied the role as the children's babysitter and accordingly was in a position of authority over the children. He was the only adult present in the residence. According to our standard – examining the evidence in the light most favorable to the State and accepting it as true, along with affording it every favorable inference that may reasonably and fairly be drawn – we conclude that Mr. Rogers was serving in a position of authority over the victim, C.W., under Wyo. Stat. Ann. § 6-2-316(a)(ii).

***Sufficiency of the Evidence – Indecent Liberties with a Minor***

[¶18] Mr. Rogers argues that the acts alleged against him did not constitute a violation of Wyo. Stat. Ann. § 6-2-316(a)(iv), and thus he was incorrectly charged. In the alternative, Rogers argues that Counts II and III against him should merge. Mr. Rogers specifically takes issue with the pleadings and jury instructions because he says they did not specify what exact acts were alleged to constitute indecent liberties. In this section, we will address Mr. Rogers' first complaint, whether the acts alleged against him constituted a violation of the statute. Merger is addressed in the next section.

[¶19] Mr. Rogers argues that fondling the victim did not rise to the level of that required under § 6-2-316(a)(iv). He asserts that what was alleged against him and the charges brought against him do not match up. He offers that a lesser charge might have been more appropriate. Mr. Rogers points to the allegations of fondling, specifically.

[¶20] In determining whether there was sufficient evidence to sustain a conviction, we apply the following standard of review:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Swan v. State,* 2014 WY 38, ¶ 14, 320 P.3d 235, 239 (Wyo. 2014).

[¶21] We said in *Solis*, ¶ 61, 315 P.3d at 635 n.3:

> It has been long recognized the prosecution may charge as it sees fit, even in instances where the charges are based on a single act. *Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed. 2d 740 (1985). *See also, Rivera v. State*, 840 P.2d 933, 943 (Wyo. 1992) (abrogated on other grounds by *Springfield v. State*, 860 P.2d 435 (Wyo. 1993)) (double jeopardy not implicated when two separate criminal charges are founded on same act). The key inquiry is whether, upon conviction of multiple counts based upon a single act, a defendant's multiple convictions can stand in the face of a double jeopardy challenge. *Ball*, 470 U.S. at 865.

6

Here, the prosecutor chose to charge Mr. Rogers with third-degree sexual abuse of a minor under the indecent liberties statute. § 6-2-316(a)(iv). That statute states as follows:

> (a) Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6-2-314 and 6-2-315, an actor commits the crime of sexual abuse of a minor in the third degree if:
>
> . . . .
>
> (iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest, immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor.

Wyo. Stat. Ann. § 6-2-316(a)(iv) (LexisNexis 2013). We have examined the indecent liberties statute before and the implications of specifying such conduct. Instead of listing what does and does not qualify as a violation of the statute, our focus has centered on defining the words contained within the statute. It is our precedent that although the definitions of the words "immodest, immoral and indecent" are somewhat uncertain, when read in context, the statute provides sufficient notice of what conduct is forbidden. *Sorenson v. State*, 604 P.2d 1031, 1034-35 (Wyo. 1979).

[¶22] We said in *Dougherty v. State*, 2010 WY 127, ¶ 11, 239 P.3d 1176, 1180 (Wyo. 2010) about *Sorenson:*

> *Sorenson*, 604 P.2d at 1035 quoted, with approval, the comments of the Colorado Supreme Court when considering the constitutionality of a similar statute:
>
> "* * * * when we take into consideration that the purpose of the act was to protect the morals of the child, that the Legislature employed apt words to describe the offense, because it is evident that the acts constituting the offense mean such as the common sense of society would regard as indecent and improper. *People v. Hicks*, 98 Mich. 86, 56 N.W. 1102. True, what shall be regarded as 'immodest, immoral and indecent liberties' is not specified with particularity, but that is not necessary. The indelicacy of the subject forbids it. The common sense of the community, as well as the sense of decency, propriety, and morality which people generally entertain, is sufficient to apply the statute to each

7

particular case, and point out unmistakably what particular conduct is rendered criminal by it. *State v. Millard*, 18 Vt. 574, 46 Am.Dec. 170. * * * *" *Dekelt v. People*, 44 Colo. 525, 99 P. 330, 331-332 (1909)

In *Dougherty*, we explained the definitions further:

The definition of "indecent" approved in *Sorenson*, 604 P.2d at 1034 n.3, states: 1. "'not decent * * * * b: not conforming to generally accepted standards of morality: tending toward or being in fact something generally viewed as morally indelicate or improper or offensive: being or tending to be obscene.'" "Obscene" is often recognized to be synonymous to "indecent," i.e., "not conforming to generally accepted standards of morality; tending toward or being in fact something generally viewed as morally indelicate or improper." *Webster's Third New Int'l Dictionary* 1147 (2002). *Black's Law Dictionary* 1182 (9th ed. 2009) defines "obscene" as "[e]xtremely offensive under contemporary community standards of morality and decency; grossly repugnant to the generally accepted notions of what is appropriate." Thus, while the statutory terms "indecent" and "obscene" are somewhat imprecise, they are generally regarded as synonymous and "indecent" has been defined in prior cases, thereby providing the ordinary citizen with notice of the types of conduct that are prohibited. *Griego*, 761 P.2d at 976 (indicating that interpretation of statutory language in other cases provides notice to citizens of what conduct is prohibited).

*Dougherty,* ¶ 12, 239 P.3d at 1180-81.

[¶23] Keeping our precedent in mind, we turn to the facts of the instant case. C.W. testified that that Mr. Rogers began fondling her and kissing her in the home's living room. Mr. Rogers then pulled C.W. to the bedroom by her wrist. Mr. Rogers pushed her onto the bed, turned off the light, and grabbed her legs and pulled her to the end of the bed. He penetrated C.W. with his fingers, performed oral sex, and then sexual intercourse. C.W. testified about the incident in detail at trial. C.W.'s guidance counselor also testified to the same during trial. At the end of the case, the jury was properly instructed regarding the phrase "immodest, immoral or indecent liberties." While the jury was instructed that the phrase had no specific definition, they were instructed that the phrase is generally defined as "an action that the common sense of

society would regard as indecent and improper." *See generally Giles v. State,* 2004 WY 101, 96 P.3d 1027 (Wyo. 2004).

[¶24] When examining the evidence in the light most favorable to the State, and affording it every favorable inference that may reasonably and fairly be drawn, we conclude that the district court reasonably could have concluded that Mr. Rogers committed indecent liberties with a minor in violation of § 6-2-316(a)(iv).

*Merger*

[¶25] Mr. Rogers argues that his three convictions should merge into one single crime. The State disagrees, and argues that Mr. Rogers was properly convicted of and sentenced for three separate and distinct crimes. We agree with the State.

[¶26] Because Mr. Rogers did not raise this issue below, we review for plain error on appeal. *Sweets v. State,* 2013 WY 98, ¶ 19, 307 P.3d 860, 867 (Wyo. 2013). To demonstrate plain error, an appellant must show that the record clearly reflects the alleged error, that the error violated a clear and unequivocal rule of law, and that the alleged error affected a substantial right causing material prejudice.

[¶27] In *Sweets v. State,* we determined the *Blockburger* "same elements" test is the sole test we will use in determining the propriety of merging two sentences in order to avoid double jeopardy. *Sweets*, ¶ 49, 307 P.3d at 875. In the same instance, we abandoned the "same facts or evidence" test, which we previously used together with the "same elements" test, to evaluate claims of double jeopardy based on multiple punishments. *Id*.

[¶28] Turning to Mr. Rogers' argument, he contends that both of his third-degree sexual abuse convictions arose out of a single incident and should merge. The charging affidavit attached to the original information identified numerous and distinct acts of alleged sexual abuse and assault committed by Mr. Rogers on C.W.: 1) kissing C.W. on her mouth and on her breasts; 2) forcing C.W. to perform oral sex on him; 3) performing oral sex on C.W. and 4) penetrating C.W.'s vagina with his penis. The State addressed Mr. Rogers' specific conduct throughout the trial and in its closing. While Mr. Rogers could have requested a bill of particulars from the State, requiring it to make "more specific allegations in the information," he did not do so. W.R.Cr.P. 3(f); *Booth v. State,* 517 P.2d 1034, 1036 (Wyo. 1974). Certainly, there were numerous, distinct incidents of sexual assault alleged, enough such that numerous offenses could have been charged. Our precedents are clear that multiple sexual assaults are separate offenses even though they might be separated by only very short time periods. *Frenzel v. State*, 938 P.2d 867, 868-9 (Wyo. 1997); *Hamill v. State*, 602 P.2d 1212,1216-17 (Wyo. 1979). Also, we have held that "[w]here independent but overlapping statutes are directed to separate evils, cumulative punishments are intended." *James*, ¶ 14, 271 P.3d at 1019 (citing *Nowack v. State*, 774 P.2d 561, 567 (Wyo. 1989)).

[¶29]   Mr. Rogers was charged and tried on three counts: one count of first-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-302(a)(i); one count of third-degree sexual abuse of a minor in violation of Wyo. Stat. Ann.§ 6-2-316(a)(ii); and one count of third-degree sexual abuse of a minor in violation of Wyo. Stat. Ann.§ 6-2-316(a)(iv).

[¶30]   Those statutes read as follows:

> **Wyo. Stat. Ann. § 6-2-302(a)(i)** (LexisNexis 2013):
>
> (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
>     (i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;
>
> **Wyo. Stat. Ann. § 6-2-316(a)(ii)** (LexisNexis 2013):
>
> (a) Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6-2-314 and 6-2-315, an actor commits the crime of sexual abuse of a minor in the third degree if:
>     ....
>     (ii) Being twenty (20) years of age or older, the actor engages in sexual intrusion with a victim who is either sixteen (16) or seventeen (17) years of age, and the victim is at least four (4) years younger than the actor, and the actor occupies a position of authority in relation to the victim[.]
>
> **Wyo. Stat. § 6-2-316(a)(iv)** (LexisNexis 2013):
>
> (a) Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6-2-314 and 6-2-315, an actor commits the crime of sexual abuse of a minor in the third degree if:
>     . . . .
>     (iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest, immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor.

10

In our reading of these three statues, each is quite distinct from the other. The first statute focuses on submission of the victim. The second statute, § 6-2-316(a)(ii), involves sexual *intrusion*, while the third charging statute, § 6-2-316316(a)(iv), involves indecent liberties. Each of the charged offenses requires proof of at least one additional element that the others do not–evidencing the legislature's intent to make the three crimes separate offenses and to impose separate punishments for violation of those offenses. Accordingly, each conviction and sentence passes the dispositive *Blockburger* test.[1] There is no violation of a clear and unequivocal rule of law as required under the second part of the plain error analysis. *See Bowlsby v. State,* 2013 WY 72, ¶ 9, 302 P.3d 913, 916 (Wyo. 2013). Because there is no violation of a rule of law, there can be no prejudice to Mr. Rogers.

## *Habitual Offender Status*

[¶31] The district court sentenced Mr. Rogers as a habitual offender under Wyo. Stat. Ann. § 6-10-201. While the State presented the jury with three prior felony convictions, Mr. Rogers argues that one of the prior felony convictions was not sufficiently proven.

[¶32] When reviewing the application of the habitual offender status, we apply the same standard of review as is applied to analyze the sufficiency of the evidence of the substantive charge. *Lopez v. State,* 2006 WY 97, ¶ 24, 139 P.3d 445, 454 (Wyo. 2006). Although stated above, we will repeat the standard:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Swan*, ¶ 14, 320 P.3d at 239.

[¶33] The Wyoming Legislature has determined that an individual is a habitual criminal if he is convicted of a violent felony and he has two or more felony convictions on charges separately brought and tried, arising out of separate occurrences. Wyo. Stat. Ann. § 6-10-201(a)(i) and (ii) (LexisNexis 2013). If the individual has three previous

---

[1] When declaring that the *Blockburger* test serves as the "sole test" for evaluating sentencing merger questions and also approving of the analysis when analyzing multiple prosecutions, we also noted that the application of the *Blockburger* test discerned legislative intent. *Sweets v. State*, 2013 WY 98, ¶¶ 24, 46, 307 P.3d 860 at 868, 875 (Wyo. 2013).

convictions for offenses committed after he reached the age of eighteen, the district court must sentence the individual to life in prison. Wyo. Stat. Ann. § 6-10-201 (b)(ii).

[¶34] Here, Mr. Rogers had three previous convictions that were introduced into evidence and used against him to prove that he was in fact a habitual offender. Mr. Rogers claims that the State did not present sufficient evidence to prove that one offense in particular was in fact a felony. We will refer to this offense as the "Ohio Offense." When the State presented evidence to the jury, it had to prove that each offense was a felony and that Mr. Rogers was the person previously convicted of those felonies. *See Chavez v. State,* 604 P.2d 1341, 1350 (Wyo. 1979).

[¶35] Mr. Rogers argues that the statute identified in journal entries from Ohio presented by the State in this case does not clearly demonstrate that he was convicted of a felony because the cited statute contains both felony and misdemeanor provisions. However, along with the journal entries, the State also presented testimony from Brent Bartell, a clerk from Cuyahoga County Ohio Court of Common Pleas, to clarify and compensate for the document's deficiencies in felony identification. Mr. Bartell explained that a "journal entry" in Ohio is similar to that of a "judgment and sentence" in Wyoming. "…[I]n Ohio, the Court speaks through its journal entry, which is actually signed by the judge. And in this particular case, was a journal entry of sentencing based on the language used in the actual journal entry." Mr. Bartell confirmed that the journal entries in question were equivalent to a judgment and sentence specifically for the Cuyahoga County Court of Common Pleas. The Cuyahoga County Court of Common Pleas, he explained, was specifically a court for felony convictions. When asked whether there was anything in the State's Exhibit 901 that identified that this conviction was a felony, Mr. Bartell testified that Mr. Rogers' sentence of one to ten years in the Ohio State Reformatory was also evidence of a felony conviction because "[i]n Ohio, misdemeanors are up to six months, and anything over six months is considered a felony offense for terms of sentencing." Nevertheless, Mr. Rogers argues that State's Exhibit 901 fails to specify the subsection of the statute that Mr. Rogers violated. He notes that in Ohio, a verdict that does not specify the subsection of the statute violated only results in a conviction of the lesser offense. However, Mr. Bartell's testimony shows that the exhibit presented by the State was the equivalent of a judgment and sentence and not a verdict. Mr. Bartell's testimony clearly shows that Mr. Rogers was convicted of a felony in Ohio.

[¶36] The State also had to prove that it was, in fact, Rogers who committed all three crimes being used against him to prove that he was a habitual offender. A fingerprint comparison/analysis expert presented testimony on behalf of the State. She looked at all three fingerprint cards from each distinct conviction. Her conclusion revealed that each of the cards were from the same person – Mr. Rogers.

[¶37] Given the foregoing testimony presented by the State, we conclude that a reasonable and rational trier of fact could have concluded that Mr. Rogers committed the

Ohio offense, and that Rogers was the individual who committed all three felonies. The district court properly sentenced Mr. Rogers to life in prison.

## CONCLUSION

[¶38] We conclude that the jury properly concluded that James Rogers was in a position of authority when he sexually assaulted C.W. Furthermore, the jury was also correct when it concluded that there was sufficient evidence to convict Mr. Rogers for third-degree sexual assault of a minor under § 6-2-316(a)(ii) and for indecent liberties with a minor under § 6-2-316(a)(iv). Finally, we affirm the sentencing decision of the district court and conclude that Mr. Rogers was properly sentenced as a habitual criminal.

[¶39] Affirmed.