# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 81

APRIL TERM, A.D. 2017

July 6, 2017

FRANK EUGENE VILLARREAL,

Appellant
(Defendant),

v.

S-16-0261

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*
    Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Benjamin E. Fischer, Assistant Attorney General. Argument by Mr. Fischer.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]   Frank Villarreal challenges convictions for battery and aggravated assault and battery which stemmed from his punching and running over Robert Flores, who did not testify at trial.   He claims that the trial court denied his Sixth Amendment right to confront witnesses against him when it allowed the emergency medical technician (EMT) and the physician who treated Mr. Flores to testify regarding several statements Mr. Flores made to them.   He also argues that his battery conviction is not supported by sufficient evidence.   We conclude that the Confrontation Clause was not violated because the statements made by Mr. Flores to his medical care providers were not testimonial; however, the battery conviction is not supported by sufficient evidence.   We affirm Mr. Villarreal's aggravated assault and battery conviction, and reverse and remand for acquittal on the battery charge.

## ISSUES

[¶2]   We rephrase the issues as:

1.   Did the victim's failure to testify and the subsequent admission of statements he made to medical providers violate the Confrontation Clause?

2.   Did sufficient evidence support the battery conviction when there was no evidence regarding the victim's bodily injury?

## FACTS

[¶3]   Ian Campos and Robert Flores were driving from Denver to Rawlins in Mr. Campos' vehicle when Mr. Campos realized that he might run out of gas.   He called Mr. Villarreal, who met them with gas at a truck stop in Sinclair.   At the truck stop, Mr. Villarreal and Mr. Flores began to argue, and Mr. Villarreal punched Mr. Flores in the face.   They decided to take their dispute south of Rawlins and fight.

[¶4]   Mr. Campos and Mr. Flores followed Mr. Villarreal's truck to Rawlins, where they left the interstate and headed south.   Mr. Villarreal saw Mr. Flores jump out of Mr. Campos' car in his rearview mirror, turned his truck around, and drove into the sagebrush field where Mr. Flores had headed.   Mr. Campos testified that he then left the area because he did not want to get into trouble.   Mr. Villarreal drove after Mr. Flores and ran over his leg.   A short time later, Mr. Villarreal drove Mr. Flores, who had a broken leg, to meet Mr. Campos.   Mr. Campos put Mr. Flores, who was screaming in pain and saying "all kinds of stuff," in his car and took him to the hospital.   At the hospital, Mr. Flores was seen by Mr. Wheat, an EMT, and later, by Dr. Cesko.   Dr. Cesko testified that when he saw Mr. Flores, approximately three hours after his admission, Mr. Flores was in "substantial pain" from his broken leg.

1

[¶5]    Mr. Flores refused to cooperate with the State during its trial preparation and did not testify at trial despite the State's efforts and the district court's order for detention and arrest warrant for him.  A jury convicted Mr. Villarreal of eight statutory violations, two of which are the subject of this appeal: battery and aggravated assault and battery.

## DISCUSSION

[¶6]    Mr. Villarreal argues that the district court violated his Sixth Amendment right to confront witnesses at trial because Mr. Flores did not testify.  Instead, the State established the identity of the victim, the identity of his assailant, and the injuries to Mr. Flores, partially through the testimony of medical personnel, who described some of the statements Mr. Flores made to them while they treated him for his broken leg.  Mr. Villarreal also claims that there was insufficient evidence for his battery conviction.

### I.    Did the victim's failure to testify and the subsequent admission of statements he made to medical providers violate the Confrontation Clause?

[¶7]    Mr. Villarreal contends that his right to confront witnesses against him was denied when the EMT and treating physician were allowed to testify regarding Mr. Flores' identity and what he said when they treated him, and because the State did not establish that Mr. Flores was unavailable.

### A.    Standard of Review

[¶8]    Mr. Villarreal argues that issues arising under the constitution, such as those implicating the Confrontation Clause of the Sixth Amendment, are questions of law and are therefore reviewed de novo.  The State contends that Mr. Villarreal did not object to the challenged testimony on the ground that it violated his right to confrontation and thus the proper standard of review is for plain error.

[¶9]    Mr. Villarreal objected to the EMT's testimony twice.  The first was a hearsay objection to the EMT's testimony regarding statements made to him by Mr. Flores. When the State's counsel asked the EMT what Mr. Flores told him, Mr. Villarreal's attorney stated: "Your Honor, I am going to object unless there's adequate foundation for a 803(4) exception, [t]his would be hearsay."  The second objection occurred during a bench conference when the State's attorney indicated that he was "going to follow with asking him to identify the possible assailant."  Mr. Villarreal's counsel again objected: "Same objection [hearsay, W.R.E. 803(4)].  The identity of the assailant is not going to be relevant to this [medical treatment].  Now, sometimes in a domestic where they are planning on sending someone home to that person, but . . . ."  Both objections were overruled.  Mr. Villarreal did not object to the treating physician's testimony.

2

[¶10]  "While the Confrontation Clause and hearsay may overlap, . . . they are distinct concepts and objections grounded upon these principles incorporate separate analyses." *Vigil v. State*, 2004 WY 110, ¶ 15, 98 P.3d 172, 177 (Wyo. 2004).  Therefore, "separate objections should be made for hearsay violations and confrontation clause violations in order to fairly alert the trial court so it can make an informed decision based upon the specific legal issues involved." *Id*.  In *Vigil*, we determined that an objection to police testimony regarding statements made by a witness was sufficient to place the trial court on notice that concerns were grounded in the Confrontation Clause—when objecting, the defendant's attorney specifically referred to the fact that the witness was not present and that there was nothing in the interview indicating he was under oath. *Id*. at ¶ 16, 98 P.3d at 177.  By contrast, the objections raised by Mr. Villarreal were based exclusively upon hearsay and do not reflect a concern regarding confrontation.  They were not sufficient to raise confrontation clause concerns to the trial court. *See Anderson v. State*, 2014 WY 13, ¶ 20, 317 P.3d 1108, 1115 (Wyo. 2014) (Confrontation Clause was not raised by "indistinct" objection).  Moreover, there were no objections to the testimony of the treating physician.  When claims for violation of the Confrontation Clause are not raised below, our "only avenue for review is under the doctrine of plain error." *McClure v. State*, 2010 WY 112, ¶ 7, 236 P.3d 1019, 1021 (Wyo. 2010); *see also Anderson*, 2014 WY 13, ¶ 20, 317 P.3d at 1115 ("[E]ven though the appellant claims constitutional error, without an appropriate objection, we will review his claim under a plain error standard.").

[¶11]  To establish plain error, Mr. Villarreal must prove "(1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him." *Anderson*, 2014 WY 13, ¶ 20, 317 P.3d at 1115 (citations omitted).  The record reflects the alleged errors, thus we turn to the second and third prongs of the plain error analysis and determine whether there was a clear and obvious transgression of a clear and unequivocal rule of law.

## B.  The Confrontation Clause

[¶12]  The Sixth Amendment protects a defendant's right to confront witnesses against him. *Bruce v. State*, 2015 WY 46, ¶ 21, 346 P.3d 909, 918 (Wyo. 2015).  In *Crawford v. Washington*, the Supreme Court recognized that the "principal evil at which the [Confrontation] Clause was directed was the . . . use of *ex parte* examinations as evidence against the accused."  541 U.S. 36, 50, 124 S.Ct. 1354, 1363, 158 L.Ed.2d 177 (2004). The clause does not allow the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id*. at 53-54, 124 S.Ct. at 1365; *Bruce*, 2015 WY 46, ¶ 21, 346 P.3d at 918 (recognizing *Crawford* applies in Wyoming).  We first address the question of whether Mr. Flores was unavailable.  We then turn to whether his statements were testimonial in nature.

3

[¶13] We apply the same analysis to determine unavailability under the Confrontation Clause as we use to determine unavailability under the Wyoming Rules of Evidence. *Grable v. State*, 649 P.2d 663, 672-73 (Wyo. 1982), *overruled on other grounds by Vlahos v. State*, 2003 WY 103, ¶ 35, 75 P.3d 628, 637 (Wyo. 2003). Rule 804(a)(5) of the Wyoming Rules of Evidence provides that a witness is unavailable when he "[i]s absent from the hearing and the proponent of his statement is unable to procure his attendance by process or other reasonable means." The "burden of proof is on the prosecution to establish that the witness is unavailable to testify at trial despite its good faith efforts to obtain his presence." *Farmer v. State*, 2005 WY 162, ¶ 10, 124 P.3d 699, 704 (Wyo. 2005). In order to meet this burden, the State must show that the witness is unavailable despite reasonable good-faith efforts to secure his presence at trial. *Id*.; *see also Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980) ("The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness."), *abrogated on other grounds by Crawford*, 541 U.S. at 63-64, 124 S.Ct. at 1371; *Hamilton v. Morgan*, 474 F.3d 854, 858-59 (6th Cir. 2007) (the prosecution's obligation to make a good-faith effort is "context-specific").

[¶14] The record does not reflect a clear and unequivocal violation of that law. The State did not present evidence regarding Mr. Flores' unavailability at trial, and Mr. Villarreal did not make any objection regarding the State's failure to establish unavailability.[1] The record reflects that Mr. Flores refused to appear to assist the State during its preparation for the trial of this matter, and that despite the issuance of a subpoena and an arrest warrant, Mr. Flores was not present at trial. The district court was aware of the difficulty the State had in procuring the presence of Mr. Flores, and although it made no finding of unavailability at trial, the record supports such a finding. We conclude that where there was no objection regarding either the Confrontation Clause or the availability of Mr. Flores, the district court did not unequivocally violate the law and therefore Mr. Villarreal has not established plain error. Further, even if the district court erred in failing to make a finding of unavailability at trial, Mr. Villarreal's Sixth Amendment right to confront the witnesses against him was not violated because Mr. Flores' statements were not testimonial.

[¶15] "Testimony . . . is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 124 S.Ct. at 1364 (internal quotation marks and citation omitted). "The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement." *Id*. at 51, 124 S.Ct. at 1364. We apply the "primary purpose test" to determine whether a statement is testimonial. That test asks "whether, in light of all the circumstances, viewed objectively,

---

[1] Mr. Villarreal's hearsay objection was made pursuant to W.R.E. 803(4), which excludes certain testimony from the hearsay rule even when the declarant is available. Thus, the availability of Mr. Flores at trial was not at issue.

4

the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, --- U.S. ---, ---, 135 S.Ct. 2173, 2180, 192 L.Ed.2d 306 (2015) (citation omitted); *see also Bruce*, 2015 WY 46, ¶ 27, 346 P.3d at 919.

[¶16]  Statements "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan v. Bryant*, 562 U.S. 344, 360, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011).  Statements made to persons who are "not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Clark*, 135 S.Ct. at 2182.  In addition, "the existence of an ongoing emergency is [another] important factor in determining the primary purpose of an interrogation." *Bruce*, 2015 WY 46, ¶ 26, 346 P.3d at 919.

[¶17]  Mr. Villarreal does not specifically identify the testimony from Mr. Wheat or Dr. Cesko which he contends violates the Confrontation Clause.  He generally takes issue with "Mr. Flores' statements related by third parties begin[ning] with his identification and continu[ing] with the cause of his injuries and the identification of the driver that he stated was driving the vehicle that ran over him."

**Testimony of Mr. Wheat, the EMT**

[¶18]  We first examine the testimony of Mr. Wheat, the EMT:

> Q. [State's counsel]: When you were first treating Mr. Flores, was any law enforcement present upon his initial entry to the hospital?
>
> A. [Mr. Wheat]: I believe there was [sic] several minutes in between when he arrived to when law enforcement was on scene.
>
> Q. Did you, upon Mr. Flores's arrival on the scene at the hospital, immediately start rendering aid to him?
>
> A. Yes, we did.
>
> . . . .

5

Q. Mr. Wheat, as you are an EMT were you providing aid to Mr. Flores in your capacity as an EMT with the Memorial Hospital of Carbon County?

A. Yes.

Q. And during that process, was Mr. Flores providing you information about his injury and what happened to him?

A. He was.

Q. When he provided that information, is it useful to you as an EMT in order to provide care and find out what his injuries are?

A. Yes.

Q. And what statements did Mr. Flores make to you about what had happened to him?

A. He said that he had been struck by a vehicle. And that is important to us to understand what injuries he could have sustained from such an accident.

. . . .

Q. Mr. Wheat, as you were treating Mr. Flores, did he ever make any statements about the identity of the possible assailant?

A. He did.

Q. And what name did he give?

A. He gave the name of -- the first name of Frank. He only stated the last initial of V.

Q. Can you describe to the jury the care that you rendered to Mr. Flores?

A. Mr. Flores was cared for for a serious lower leg injury, including splinting and x-rays.

6

Q. Was Mr. Flores able to walk into the hospital under his own willpower?

A. He was not.

Q. And why not?

A. The severity of his injury.

Q. And how did he get into the hospital?

A. He was removed from the car and brought in by a wheelchair.

Q. Okay. Can you describe Mr. Flores's overall demeanor as you were treating him for his injuries?

A. He was scared. I -- I remember him being scared. He was nervous of everybody that was coming and going.

[¶19] Applying the primary purpose test, we do not find Mr. Flores' statements related by the EMT to be testimonial. All of the circumstances weigh against finding any prosecutorial purpose in those statements. The statements were made in the emergency room to an EMT who was charged with examining Mr. Flores and treating his injuries. Mr. Flores' conversation with the EMT occurred immediately after his arrival at the hospital, when he was in severe pain, and in the context of receiving treatment for his severely broken leg, a medical emergency. There were no police officers present at the time the EMT was treating Mr. Flores.

[¶20] Mr. Flores stated that he was struck by a vehicle, which, as Mr. Wheat explained, was important for him to know in order to assess Mr. Flores' injuries. Also, during the course of his interaction with the EMT, Mr. Flores identified his assailant as "Frank V." While the identification of an assailant may not be necessary for the receipt of medical treatment, in this instance it was uttered during the course of a medical emergency, when Mr. Flores was in extreme pain. We have recognized that

> a severely injured victim may have no purpose at all in answering questions posed; the answers may simply be reflexive. The victim's injuries could be so debilitating as to prevent her from thinking sufficiently clearly to understand whether her statements are for the purpose of addressing an ongoing emergency or for the purpose of future prosecution.

7

Taking into account a victim's injuries does not transform this objective inquiry into a subjective one.

*Bruce*, 2015 WY 46, ¶ 33, 346 P.3d at 921 (quoting *Bryant*, 562 U.S. at 368-69, 131 S.Ct. at 1161). Similar statements by out-of-court declarants identifying defendants have been judged to be non-testimonial under the Confrontation Clause. For example, in *Davis*, the Supreme Court upheld the admission of a 911 call during which the attacker was identified because those statements described "current circumstances requiring police assistance." 547 U.S. at 827, 126 S.Ct. at 2276. We have also upheld the admission of statements identifying an assailant during the course of a 911 call, finding that those statements were not testimonial under circumstances where the 911 dispatcher's questioning was directed toward determining the location of the emergency and nature of the injury and where the caller's objective purpose was not to report a crime, but to obtain medical assistance for his wife. *Bruce*, 2015 WY 46, ¶ 34, 346 P.3d at 921. The purpose of the conversation between the EMT and Mr. Flores was not to report a crime or to create an out-of-court substitute for trial testimony; rather, it was to resolve an ongoing medical emergency. Therefore, the statements of Mr. Flores were not testimonial and their admission does not violate the Confrontation Clause.

**Testimony of Dr. Cesko**

[¶21] We now turn to the testimony of Dr. Cesko:

> Q. [State's counsel]: Did you know Mr. Flores prior to this incident?
>
> A. [Dr. Cesko]: Yes, I did.
>
> Q. How did you know Mr. Flores?
>
> A. He was a regular patient of mine.
>
> Q. And did you also see him in Carbon County hospital?
>
> A. Yes, I did.
>
> Q. During this trauma incident?
>
> A. Yes, sir.
>
> Q. Is it standard medical practice to get a history from a patient about the circumstances of the trauma that brings him to Memorial Hospital of Carbon County?

8

A. Correct. We do an H and P, which stands for history and physical, on every patient that we admit. The history is to ascertain if it's an illness, what brought the illness on; if it's a trauma, what caused the trauma.

Q. Was this done in this case?

A. Yes, it was.

Q. And what does that history reveal to you as a doctor?

A. When we got the history, if it's a trauma, it tells us how the injury occurred, it would give us the mechanism of the injury so that we can better treat the patient.

Q. And what was that in this case?

A. In this case, Mr. Flores reported that he had been struck by a truck and ran over by the same truck.

Q. As far as the nature of [Mr. Flores'] injuries, what were the nature of these injuries that he may have suffered?

A. He suffered a comminuted fracture of the right tibia and fibula.

. . . .

Q. Now, is this a significant injury, in your opinion?

A. Yes, it is.

. . . .

Q. Did you see Mr. Flores in the hospital?

A. Yes, I did.

Q. And would you tell us about that, as far as how was he -- how he was doing, especially as it relates to pain.

A. His pain was substantial. He had come in, I would say by the record, at about 4:40 in the morning is when he was admitted. I typically do rounds at 7:00 a.m., and that is when I would first have seen him. He was in substantial pain from that. He did have a splint in place. The leg was elevated. And he was laying supine with his right leg elevated.

. . . .

Q. [Mr. Villarreal's counsel]: Okay. So you have known Mr. Flores for some time; is that right?

A. Yes, I have.

Q. And yet, he refused to tell you who was involved in this?

A. Correct.

. . . .

Q. Dr. Cesko, the patient communicated to you, did he not, that the car was deliberately driven over him?

A. That is correct.

Q. It wasn't an accident?

A. Correct.

[¶22] Mr. Villarreal complains that Dr. Cesko's identification of Mr. Flores as the victim and the cause of his injuries violated the Confrontation Clause. Again, the focus of our analysis is on the purpose of the statements as "framed by their context." *Bruce*, 2015 WY 46, ¶ 34, 346 P.3d at 921. Dr. Cesko was familiar with Mr. Flores because he was "a regular patient" of his. This identification of Mr. Flores does not raise confrontation clause concerns because it does not express an out-of-court statement, but rather Dr. Cesko's own observations. *See Id*. at ¶ 21, 346 P.3d at 918.

[¶23] With respect to Dr. Cesko's testimony regarding Mr. Flores' description of how his injury occurred, Dr. Cesko explained that the mechanism of injury enables providers to better diagnose and treat an injury. In addition, Mr. Flores refused to tell Dr. Cesko who was involved in the incident. All of these circumstances indicate that the objective purpose of Mr. Flores' statements was not to create an out-of-court statement to assist future prosecution, but to seek treatment of his injury.

10

[¶24] Examining Mr. Flores' statements to the EMT and to his doctor in the context in which they were made, we conclude that their primary purpose was to seek medical care and was not testimonial. The procedural precondition of cross-examination guaranteed by the Confrontation Clause does not apply to statements that are non-testimonial. *Crawford*, 541 U.S. at 51, 124 S.Ct. at 1364. Mr. Villarreal has not established plain error; the admission of the statements did not violate the Confrontation Clause.

## II. Did sufficient evidence support the battery conviction when there was no evidence regarding the victim's bodily injury?

[¶25] The jury convicted Mr. Villarreal of battery under Wyo. Stat. Ann. § 6-2-501(b) (LexisNexis 2015) for punching Mr. Flores in the face while they were at the Sinclair gas station. That statute provides that "a person is guilty of battery if he intentionally, knowingly, or recklessly causes bodily injury to another person by use of physical force." *Id*. Mr. Villarreal contends that his battery conviction is not supported by sufficient evidence because there was no proof of bodily injury at trial. The State argues that a jury could have reasonably inferred that Mr. Flores suffered bodily injury when he was punched in the face.

[¶26] When we review an appellant's claims regarding sufficiency of the evidence, we "examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it." *Bean v. State*, 2016 WY 48, ¶ 44, 373 P.3d 372, 386 (Wyo. 2016) (citations omitted). We disregard any evidence that conflicts with the State's evidence, *Pena v. State*, 2015 WY 149, ¶ 16, 361 P.3d 862, 866 (Wyo. 2015), and we will not "substitute our judgment for that of the jury." *Bean*, 2016 WY 48, ¶ 44, 373 P.3d at 386 (citations omitted). Instead, we "determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." *Id*. (citations omitted). Finally, we apply this standard regardless of whether the evidence is direct or circumstantial. *Id*.

[¶27] Mr. Villarreal argues that at trial the State presented no evidence upon which a jury could reasonably conclude that the bodily injury element of battery had been proven beyond a reasonable doubt. Both Mr. Wheat and Dr. Cesko testified that they were unaware of any injuries other than the broken leg, no additional injuries were noted in Mr. Flores' medical record, and no additional injuries were reported by Mr. Flores. The State offered testimony from Mr. Campos that Mr. Villarreal "hit" Mr. Flores in the face. Mr. Villarreal also testified that he "punched him in the face." In addition, Mr. Villarreal confessed that he "hit [Mr. Flores] one time." The State argues that the jury could have inferred from Mr. Villarreal's confession and his tone of voice that his actions inflicted pain on Mr. Flores. The State also claims that the jury could infer that Mr. Flores was afraid of Mr. Villarreal because his punch caused physical pain.

[¶28] "[A] conviction of a crime may be had upon circumstantial evidence." *Hurst v. State*, 563 P.2d 232, 237 (Wyo. 1977). However, when the record discloses a dearth of evidence regarding an element of that crime, reversal for entry of a judgment of acquittal is appropriate. *See Granzer v. State*, 2008 WY 118, ¶ 28, 193 P.3d 266, 273 (Wyo. 2008) (J. Voigt, dissenting). The prosecution had the burden of establishing all of the elements of battery beyond a reasonable doubt. *See, e.g., Jones v. State*, 2012 WY 82, ¶ 34, 278 P.3d 729, 737 (Wyo. 2012); *Duke v. State*, 2004 WY 120, ¶ 83, 99 P.3d 928, 953 (Wyo. 2004). The jury instructions defined bodily injury as "a cut, abrasion, burn or temporary disfigurement; physical pain; or impairment of the function of bodily member, organ or faculty." Here, the State produced no evidence that would lead a jury to conclude that Mr. Flores suffered bodily injury when Mr. Villarreal hit him. Mr. Flores did not testify. There is no evidence regarding the impact of Mr. Villarreal's punch. There is no evidence regarding Mr. Flores' reaction to that punch.

[¶29] The State's contention that the jury reasonably inferred the existence of "physical pain" from testimony that Mr. Villarreal "hit" or "punched" Mr. Flores and from their "general knowledge" that "getting punched in the face hurts," simply requires too much speculation. The only evidence in the record concerning the existence of bodily injury is the testimony of Mr. Wheat and Dr. Cesko indicating that the sole injury suffered by Mr. Flores was a broken leg. From the evidence presented, a jury could not reasonably conclude that Mr. Flores suffered bodily injury when Mr. Villarreal hit him. Therefore, we reverse with instructions to acquit Mr. Villarreal on that charge. *See Granzer*, 2008 WY 118, ¶ 23, 193 P.3d at 272.

*CONCLUSION*

[¶30] There was no plain error in admitting testimony regarding statements Mr. Flores made to the emergency medical technician and physician when they were treating his injury because those statements were not testimonial. There was insufficient evidence introduced at trial to allow a jury to reasonably conclude that Mr. Flores suffered bodily injury when Mr. Villarreal hit him. We therefore affirm Mr. Villarreal's aggravated assault and battery conviction and reverse and remand for acquittal on the battery charge.