FOX, Justice.
[¶1] Paul Michael Harnetty was an OB/GYN in Casper, Wyoming. A jury convicted him of sexually assaulting two of his patients. He contends that there was insufficient evidence to convict him, the district court erred when it denied his proposed theory of defense *370 instruction, and the court erred when it denied his W.R.Cr.P. 34 motion for arrest of judgment. We affirm.
ISSUES
[¶2] We rephrase the issues as:
1. Did the State present sufficient evidence that Dr. Harnetty was in a "position of authority"?[1]
2. Did the district court err when it rejected Dr. Harnetty's proposed theory of defense instruction that asked the court to instruct the jury on a different crime than the one the State had charged?
3. Did the district court err when it denied Dr. Harnetty's post-trial motion for arrest of judgment?
FACTS
[¶3] Dr. Harnetty was an OB/GYN at Community Health Center in Casper, Wyoming. He was K.L.'s and K.C.'s doctor while both were pregnant.
K.L.'s Testimony
[¶4] Dr. Harnetty delivered K.L.'s first child in 2013. K.L. became pregnant with her second child in April 2015 and continued to see Dr. Harnetty. Approximately four months into her pregnancy, during a regular checkup, Dr. Harnetty rubbed his clothed "genitals against [K.L.'s], put his hand on [her] stomach, and made a comment about how pregnant women turn him on."
[¶5] At a later appointment, K.L. brought her friend along "just to be on the safe side[.]" When Dr. Harnetty first walked into the examination room and saw K.L.'s friend, he asked if K.L. and her friend had ever been intimate together and whether the two of them would be interested in having sexual relations with him.
[¶6] Later, on approximately August 17, 2015, K.L. had another appointment with Dr. Harnetty to discuss the results of her ultrasound. Dr. Harnetty wanted to check her cervix to see if K.L. had "started dilating." While Dr. Harnetty was checking K.L.'s cervix, she "felt his hand turn, and then he started ... rubbing [her] clitoris with his thumb in a very caressing way." After K.L. gave him a concerned look, Dr. Harnetty then "turned his hand again and stuck one of his fingers up [her] anus." K.L. testified that she had never before had a "rectal exam done by an OB/GYN." Dr. Harnetty's actions left K.L. "shocked" and wondering "what the hell just happened." K.L. attempted to get another OB/GYN, but could not "because [of her Medicaid] insurance or because of how far along [she] was." She even considered using a midwife, but because she had needed an emergency C-section with her first child, K.L. continued to see Dr. Harnetty.
[¶7] Near the end of her pregnancy, in approximately October 2015, K.L. saw Dr. Harnetty for another checkup, and Dr. Harnetty wanted to check her cervix. Again, Dr. Harnetty "stuck two fingers up [her] anus." K.L. looked at Dr. Harnetty before he left the room and he told her, "I just like to watch the expression on your face." K.L. testified that, at other appointments, Dr. Harnetty would grab her breasts over her shirt, "grope" her buttocks, and tell her that "he wanted to get [her] pregnant."
[¶8] During the pregnancy, K.L. learned she had low amniotic fluid. Dr. Harnetty told her that she had a "high-risk" pregnancy because of her amniotic fluid. After she had an ultrasound, she received a call from Community Health in which they told her that "[W]e see some concerns, so you need to come in this afternoon." K.L. rushed to the office, "freaking out" and crying, only to have Dr. Harnetty tell her that he "just wanted to see [her]." After K.L. called Community Health and complained about Dr. Harnetty, they found another doctor for her. The new doctor informed her that she did not have a high-risk pregnancy, but rather, "a perfect, normal pregnancy" and did not "check [her] cervix once."
*371 K.C.'s Testimony
[¶9] K.C. also saw Dr. Harnetty at Community Health for her pregnancy. She was pregnant with twins and had a "high-risk" pregnancy. During an exam in October 2013, the "first exam," K.C. testified that Dr. Harnetty did a pelvic exam, and instead of focusing on her cervix or uterus, Dr. Harnetty used his thumb to "rub[ ] [her] clitoris back and forth" for around three to four minutes. K.C. felt like Dr. Harnetty was "trying to arouse [her] instead of focus[ing] on the" purpose of the exam.
[¶10] At another exam in December 2013, or January 2014, the "last exam," K.C. testified that Dr. Harnetty examined her again to "check on [her] contractions." And, again, Dr. Harnetty focused instead on "rubbing against [her] clitoris." K.C. testified that she was "scared." K.C. had never had an OB/GYN rub or touch her clitoris during an exam.
[¶11] K.C. explained that she undressed and allowed Dr. Harnetty to do the exams on her because he was the doctor and "you kind of have to." While he was rubbing her clitoris, she knew "something" was "wrong" but didn't know how to stop it because of the "delicate situation [of] being pregnant" and because she had a high-risk pregnancy. She felt like she had to "get through" it. She would not have let Dr. Harnetty do these things to her if "he wasn't [her] doctor."
The Charges, Verdict, and Sentence
[¶12] The State initially charged Dr. Harnetty with three counts of second-degree sexual assault and one count of third-degree sexual assault against K.L., and three counts of second-degree sexual assault against K.C.[2] The State charged the second-degree sexual assaults under Wyo. Stat. Ann. § 6-2-303(a)(vi) (LexisNexis 2013), the "position of authority" subsection:
(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:
(vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit[.]
[¶13] At the beginning of the trial, the district court raised concerns with Counts 7 and 8 because they contained identical language. Both concerned second-degree sexual assaults of K.C. On the second day of trial, the State moved to amend Count 7 as the "first time" and Count 8 as the "last time." Dr. Harnetty objected given the late stage of the proceedings. The district court took the matter under advisement. On the fourth day of trial, the State and Dr. Harnetty agreed the State would dismiss Count 7 and "Count Eight [would] be amended as [the State] requested of the Court." The court granted that motion.
[¶14] The jury convicted Dr. Harnetty of one count of second-degree sexual assault against K.L. (Count 6), and one count of second-degree sexual assault against K.C. (Count 8). The district court sentenced him to consecutive terms of ten to fifteen years on each count. Additional facts and proceedings are discussed below as necessary.
DISCUSSION
I. The State presented sufficient evidence that Dr. Harnetty was in a position of authority
[¶15] Dr. Harnetty contends that the State did not present sufficient evidence he was in a position of authority. He argues the legislature did not intend to include an OB/GYN within the "position of authority" subsection of the sexual assault statutes.
A. Standard of Review
[¶16] To evaluate whether the State provided sufficient evidence to meet its burden, we " 'examine and accept as true the evidence of the prosecution together with all logical and reasonable inferences to be drawn therefrom.' "
*372 Kite v. State , 2018 WY 94, ¶ 35, 424 P.3d 255, 265 (Wyo. 2018) (quoting Pearson v. State , 2017 WY 19, ¶ 10, 389 P.3d 794, 796 (Wyo. 2017) ). "We disregard any evidence that conflicts with the State's evidence." Villarreal v. State , 2017 WY 81, ¶ 26, 398 P.3d 512, 520 (Wyo. 2017) (citing Pena v. State , 2015 WY 149, ¶ 16, 361 P.3d 862, 866 (Wyo. 2015) ). After examining the State's evidence, whether direct or circumstantial, the sole inquiry is "whether a rational trier of fact could find that the essential elements of a crime were proven beyond a reasonable doubt." Flores v. State , 2017 WY 120, ¶ 12, 403 P.3d 993, 996 (Wyo. 2017) ; see also Villarreal , 2017 WY 81, ¶ 26, 398 P.3d at 520.
B. An OB/GYN is in a position of authority over patients during an examination
[¶17] Under the second-degree sexual assault statute at issue, the State had to prove Dr. Harnetty inflicted sexual intrusion on K.L. and K.C. while in a position of authority and that he used that authority to cause the victims to submit. Wyo. Stat. Ann. § 6-2-303(a)(vi). "Position of authority" is defined as:
[T]hat position occupied by a parent, guardian, relative, household member, teacher, employer, custodian or any other person who, by reason of his position, is able to exercise significant influence over a person[.]
Wyo. Stat. Ann. § 6-2-301(a)(iv). Dr. Harnetty does not fall within the enumerated categories. The issue is whether an OB/GYN is "by reason of his position, [ ] able to exercise significant influence over a [patient]."
[¶18] The term "authority" as used in the statute "mean[s] an externally granted power, not a self-generated control." Scadden v. State , 732 P.2d 1036, 1042 (Wyo. 1987). "Wyoming's statute is exceptionally inclusive both as written and as construed in Scadden ." Faubion v. State , 2010 WY 79, ¶ 19, 233 P.3d 926, 931 (Wyo. 2010). We have previously determined the extent to which the "position of authority" statute applies to those in the medical, or a related, field. In Faubion v. State , we held that a chiropractor holds a position of authority because a chiropractor "is governed by statute, there is a fiduciary or trust relationship between a patient and his healers, and chiropractors govern themselves by a variety of ethical codes." Rogers v. State , 2015 WY 48, ¶ 14, 346 P.3d 934, 938 (Wyo. 2015) (discussing Faubion , 2010 WY 79, ¶ 18, 233 P.3d at 931 ).
[¶19] In Baldes v. State , we concluded that a certified nursing assistant was in a position of authority:
Although there are distinct differences between the job duties of a chiropractor [as in Faubion ] and a certified nurse assistant, when we focus on the power and control aspects of those positions with respect to the clients or patients they serve, the same reasoning applies. Power differentials exist in professional situations in which a service provider has knowledge, experience, and authority that the client seeks and needs from the provider. In a situation involving a provider of medical services, a client may be rendered exceptionally vulnerable by the nature of the illness or disability for which he seeks services .
2012 WY 67, ¶ 11, 276 P.3d 386, 389 (Wyo. 2012) (emphasis added). Finally, in Solis v. State , we held that a massage therapist occupies a position of authority because the victim "needed the services" of the defendant, the defendant held himself out as a massage therapist who could competently render those services, and, "[i]mportantly," the victim trusted the defendant and followed his instructions during the session. 2013 WY 152, ¶ 34, 315 P.3d 622, 630-31 (Wyo. 2013).
[¶20] The "power differential" between OB/GYN and patient is perhaps even more pronounced and leads us to conclude that an OB/GYN occupies a position of authority. As was the chiropractor in Faubion , a physician's conduct is governed by statute and an ethical code. See Wyo. Stat. Ann. §§ 33-26-101 through 601 (LexisNexis 2013); The Code of Medical Ethics of the American Medical Association . An AMA Code of Medical Ethics opinion calls consensual sexual relations with patients "unethical" because they "may exploit the vulnerability of the patient." See AMA, Code of Medical Ethics Opinion 9.1.1, available at https://www.ama-assn.org/delivering-care/ethics/romantic-or-sexual-relationships-patients *373 (last visited on February 25, 2019).
[¶21] A pregnant woman who seeks the services, advice, and treatment of an OB/GYN places a great deal of trust in that health care provider. Baldes , 2012 WY 67, ¶ 11, 276 P.3d at 389 ("In a situation involving a provider of medical services, a client may be rendered exceptionally vulnerable by the nature of the illness or disability for which he seeks services."). In this case, the State's expert witness, Dr. Stephen Rotholz, an OB/GYN, testified:
Q: Is it fair to say that there's a fairly high position of trust between the doctor and the patient?
A: Huge, yeah.
He also characterized the patient/OB/GYN relationship as "hierarchical." Even Dr. Harnetty's expert witness conceded that "maybe other people perceive" that an OB/GYN is in a "position of authority."
[¶22] K.L. testified that she went to see Dr. Harnetty whenever he told her to because she had been led to believe she had a "high-risk" pregnancy. On one occasion, K.L. rushed to see Dr. Harnetty after she received a call from Community Health about "some concerns" with her ultrasound, only to have Dr. Harnetty tell her it was just so he could see her. Later, K.L. found out from her new doctor that she, in fact, had a "perfect, normal pregnancy."
[¶23] K.C. testified that she allowed Dr. Harnetty to examine her the way he did because "you kind of have to," and that she would not have allowed him to touch her like that if he had not been her doctor. When Dr. Harnetty began to assault her, K.C. felt like she could not do anything because of the "delicate situation [of] being pregnant" and her high-risk pregnancy.
[¶24] Other than asserting that " Faubion v. State , Baldes v. State and Solis v. State were wrongly decided," Dr. Harnetty does not explain why we should overrule those decisions. Rather, he argues the legislature did not intend to include "health care providers" under the position of authority statute because of another subsection of the second-degree sexual assault statute. Before July 1, 2018, the second-degree sexual assault statute included subsection (a)(viii), which applied if the "actor inflicts sexual intrusion in treatment or examination of a victim for purposes or in a manner substantially inconsistent with reasonable medical practices." Wyo. Stat. Ann. § 6-2-303(a)(viii) (LexisNexis 2014 Supp.). In 2018, the legislature repealed subsection (a)(viii) and added the term "health care provider" to the position of authority subsection-(a)(iv). Wyo. Stat. Ann. § 6-2-301(a)(iv). Dr. Harnetty contends that the State should have charged him under the subsection concerning treatment or examination, then (a)(viii). He posits that since the position of authority subsection did not include "health care provider" at the time of his conduct, the legislature did not intend for the position of authority subsection to include any type of "health care provider" until it amended the statute in 2018.[3] Instead, he argues, only (a)(viii) governed his conduct at the time.
[¶25] It is not the defendant's prerogative to choose the crimes the State charges. See, e.g. , Derksen v. State , 845 P.2d 1383, 1388 (Wyo. 1993). The State has the "exclusive power to determine who to charge with a crime and with what crime to charge them." DeLeon v. State , 896 P.2d 764, 768 (Wyo. 1995) (citation omitted). Our prior cases in Faubion , Baldes , and Solis have held that medical providers can hold a position of authority because of the type of relationship they have with their patients. "When this Court interprets a statute and the legislature makes no material legislative change in the provision thereafter, the legislature is presumed to acquiesce in the Court's interpretation." In re ANO , 2006 WY 74, ¶ 14, 136 P.3d 797, 801 (Wyo. 2006) (citation omitted).
*374 Since our decisions in Faubion , Baldes , and Solis , the legislature has not attempted to override these decisions by amending the statute.[4] As Faubion , Baldes , and Solis demonstrate, together with the facts in this case, an OB/GYN holds a position of authority over a patient. The State presented sufficient evidence to sustain Dr. Harnetty's convictions in this case.
II. The district court did not err when it rejected Dr. Harnetty's proposed theory of defense instruction
[¶26] Dr. Harnetty proposed a theory of defense instruction that would have instructed the jury it had to conclude beyond a reasonable doubt that his conduct was "substantially inconsistent with reasonable medical practices" to convict him. His proposed instruction sought to require the State to prove that he violated subsection (a)(viii) discussed above. Because this was not a proper theory of defense, but rather an attempt to instruct the jury on a crime which the State did not charge, the district court did not err when it rejected Dr. Harnetty's proposed instruction.
A. Standard of Review
[¶27] A defendant has a due process right to a theory of defense instruction. See Bouwkamp v. State , 833 P.2d 486, 490 (Wyo. 1992). We review a district court's rejection of a proposed theory of defense instruction de novo. McEuen v. State , 2017 WY 15, ¶ 22, 388 P.3d 779, 784 (Wyo. 2017).
B. Dr. Harnetty's proposed theory of defense instruction was not a theory of defense to the crime charged
[¶28] Dr. Harnetty proposed the following instruction as his theory of defense:
You are instructed that the Defendant believes that before you decide on the charges filed by the State, ... you must first decide the following:
Wyoming Law provides that when an act of "intrusion" occurs "in treatment or examination of a victim," then the State must prove, beyond a reasonable doubt, that "sexual intrusion was for purposes which were substantially inconsistent with reasonable medical practices" or that "intrusion was performed in a manner which was substantially inconsistent with reasonable medical practices."
Defendant asserts that there is no dispute that each charged offense occurred during a medical examination by the Defendant, a properly licensed physician at the time of each examination. If you agree that any intrusion alleged in the Information occurred during medical examinations or treatment of any one or all of the victims, then you must determine if the purpose or manner of each intrusion was substantially inconsistent with reasonable medical practices.
If you find any intrusion was not "substantially inconsistent with reasonable medical practices", then you must find Dr. Paul Harnetty Not Guilty as to that charge.
(Emphasis in original.)
[¶29] A proper theory of defense instruction must "sufficiently inform the jury of the theory of defense," and there must be "competent evidence" to support that theory of defense. Bruce v. State , 2015 WY 46, ¶ 79, 346 P.3d 909, 932 (Wyo. 2015) (citation omitted). We review whether there is "competent" evidence to support a proposed theory of defense applying the same standard we apply to review sufficiency of the evidence appeals. Id. at ¶ 80, 346 P.3d at 932-33. A court may properly reject a proposed theory of defense instruction if it is "erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events." Id. at ¶ 79, 346 P.3d at 932. All of these questions assume that the theory at issue is, in fact, a recognized theory of defense. See Bouwkamp , 833 P.2d at 490. Requesting that the jury be instructed on a crime the State has not charged is not a theory of defense. Id. ("Suggestion of an *375 alternative charge is not a defense to the crime being prosecuted."). An alternative charge "may offer the jury a different way to interpret the facts, but does not present a defense[.]" Id.
[¶30] Dr. Harnetty's proposed instruction was not a proper theory of defense instruction. Instead, it was a request that the State prove an element that is not included within the position of authority subsection charged. A defendant does not have a due process right to have the court instruct the jury on a crime for which he is not charged under and is not otherwise a lesser-included offense. Consequently, the district court did not err when it rejected the instruction.[5]
III. The district court did not err when it denied Dr. Harnetty's post-trial motion for arrest of judgment
[¶31] After the verdict, Dr. Harnetty filed a Rule 34 motion for arrest of judgment regarding Count 8, which dealt with K.C. Essentially, he argued the State's testimony at the preliminary hearing did not match K.C.'s testimony at trial. However, because his motion did not challenge the district court's jurisdiction over the offense or argue that the Information did not state sufficient facts to constitute an offense, the district court properly denied his motion.
A. Standard of Review
[¶32] We have never stated the appropriate standard of review for a motion for arrest of judgment. We have stated, however, that " '[t]he standard of review of a post-trial motion is abuse of discretion.' " Harlow v. State , 2003 WY 47, ¶ 70, 70 P.3d 179, 202 (Wyo. 2003) (quoting Watson v. State , 722 So.2d 475, 480 (Miss. 1998) ). Similarly, we use our abuse of discretion standard when we review the denial of a Rule 33 motion for a new trial. Hill v. State , 2016 WY 27, ¶ 42, 371 P.3d 553, 564-65 (Wyo. 2016). Because a motion for arrest of judgment is similar to a motion for a new trial that seeks to set aside the verdict, we conclude the abuse of discretion standard applies. "An abuse of discretion does not occur unless a court has acted in a manner which exceeds the bounds of reason under the circumstances." Anderson v. State , 2018 WY 6, ¶ 11, 408 P.3d 1148, 1151 (Wyo. 2018) (citations omitted).[6]
B. Dr. Harnetty's motion did not allege that the district court lacked jurisdiction or that the State failed to charge an offense
[¶33] At the preliminary hearing, Detective Sarah Nelson was the State's sole witness. The charges relating to K.C. had a date range of between August 1, 2013, and January 31, 2014. Detective Nelson testified that K.C. told her that Dr. Harnetty assaulted her a "couple times ... during both of her pelvics[.]" Detective Nelson testified that K.C. said her pelvic exams were in September 2013 and October 2013. At trial, K.C. testified that she was assaulted twice-the "first time" in October 2013, and the "last time" in December 2013, or January 2014. During the trial, the State moved to dismiss Count 7 and amend Count 8 to state "the last *376 time," and Dr. Harnetty did not object. The jury convicted him of Count 8.
[¶34] After the trial, Dr. Harnetty filed a Rule 34 motion for arrest of judgment. He cited to the discrepancy between Detective Nelson's testimony at the preliminary hearing and K.C.'s testimony at trial. Because Dr. Harnetty's motion did not go to the court's jurisdiction and did not argue that the Information failed to charge an offense, as required by Rule 34, the court denied the motion. On appeal, Dr. Harnetty argues that, because Detective Nelson's testimony at the preliminary hearing differed from K.C.'s testimony at trial regarding the "last time," he never received a preliminary hearing on Count 8.
[¶35] Rule 34 of the Wyoming Rules of Criminal Procedure states:
The court on motion of a defendant shall arrest judgment if the indictment, information or citation does not charge an offense or if the court was without jurisdiction of the offense charged . The motion in arrest of judgment shall be made within 10 days after verdict or finding of guilty, or after the plea of guilty or nolo contendere, or within such further time as the court may fix during the 10-day period. The motion shall be determined and an order entered within 10 days after such motion is filed and if not so entered it shall be deemed denied, unless within such 10 days the determination shall be continued by order of the court, but a continuance shall not extend the time to a day more than 30 days from the date the motion is filed.
(Emphasis added.)
[¶36] A Rule 34 arrest of judgment motion is appropriate only where the court lacks jurisdiction, or the facts as stated in the charging document do not constitute an offense. See McGinnis v. State , 17 Wyo. 106, 96 P. 525, 526 (1908). Dr. Harnetty's motion did not allege the district court lacked jurisdiction or that the Information failed to state facts to support the charge. At the time of the preliminary hearing, the date range for Count 8 was between August 1, 2013, and January 31, 2014. The testimony at the preliminary hearing and trial fell within this range as charged in the Information. The Information included all the essential elements necessary to support a charge under the second-degree sexual assault statute. Similarly, while a discrepancy in testimony between a preliminary hearing and trial may be ripe for cross-examination, it does not affect a district court's jurisdiction. See Robinson v. State , 831 P.2d 231, 233 (Wyo. 1992) (explaining the difference between "jurisdictional defects (which would prevent the state from bringing the defendant to trial) and nonjurisdictional claims (which would not prevent a trial)"). Consequently, the district court did not abuse its discretion when it denied Dr. Harnetty's motion for arrest of judgment.
CONCLUSION
[¶37] The State presented sufficient evidence that Dr. Harnetty was in a position of authority. The district court did not err when it rejected his proposed theory of defense instruction. Finally, the court did not abuse its discretion when it denied his post-trial Rule 34 motion for arrest of judgment. Affirmed.

At the sentencing hearing, Dr. Harnetty's counsel indicated that Dr. Harnetty had lost his medical license. However, because he was referred to as "Dr. Harnetty" throughout the transcripts, and given the factual background in this case, we will refer to him as "Dr. Harnetty" in this opinion.

The State also charged him with five counts of sexual assault against four other victims. The jury acquitted Dr. Harnetty of these other charges which will only be referenced where relevant.

Dr. Harnetty appears to support his argument by asserting that an "OB/GYN examination entails sexual intrusion." Such a proposition is hardly disputable. However, to prove "sexual intrusion" under the sexual assault statutes, the State must prove that the intrusion "can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse[.]" Wyo. Stat. Ann. § 6-2-301(a)(vii)(A). Dr. Harnetty does not contend the State failed to present sufficient evidence that his conduct meets this definition.

Although the decision in Solis did not deal directly with the now repealed subsection (a)(viii), in that case, the State charged the defendant with violating both subsection (a)(vi) and (a)(viii), and the jury convicted him of both. Solis , 2013 WY 152, ¶ 1, 315 P.3d at 625.

Because we conclude that Dr. Harnetty's proposed theory of defense instruction was not a proper theory of defense, we do not reach the State's alternative argument that the district court appropriately rejected Dr. Harnetty's proposed instruction as an untimely submission under the district court's criminal case management order.

The State asserts that, assuming any error occurred, Dr. Harnetty invited the error because he "failed to request a bill of particulars [as to Count 8], and he stipulated to the amendment." We disagree. The State does not provide any authority that the failure to request a bill of particulars, even where appropriate, equates to invited error when the defendant raises an issue on appeal regarding the charging documents. Moreover, when the State discussed amending the Information to clarify that Count 8 dealt with the "last time" on the second and fourth day of trial, Dr. Harnetty, at best, acquiesced to the State's motion. This does not warrant application of the invited error doctrine. See Mraz v. State , 2016 WY 85, ¶ 64, 378 P.3d 280, 294 (Wyo. 2016) (refusing to apply invited error when the defendant's alleged invited error took the form of agreeing with the prosecutor's plan of action and " 'not an act of such independent intent that ... [can be viewed] as a complete waiver of the error now alleged on appeal' ") (quoting Vaught v. State , 2016 WY 7, ¶ 35, 366 P.3d 512, 520 (Wyo. 2016) ).