# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 95

APRIL TERM, A.D. 2024

August 30, 2024

JARRETT GAGE VARGAS,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-23-0127, S-24-0018

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
    Office of the State Public Defender: Ryan Roden, Interim Wyoming State Public Defender;* Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

* An order substituting Ryan Roden for Diane Lozano was entered on August 9, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     Jarrett Gage Vargas was convicted after a jury trial of aggravated child abuse.  Mr. Vargas argues the district court erred when it rejected his theory of defense jury instruction.  Because Mr. Vargas' proposed jury instruction was not a proper theory of defense instruction, we affirm.

*ISSUE*

[¶2]     Mr. Vargas raises one issue, which we restate as follows:

> Did the district court err when it rejected Mr. Vargas' theory of defense jury instruction?

*FACTS*

[¶3]     On October 15, 2021, Mr. Vargas was caring for his three-month-old foster child, RW, at his home in Casper, Wyoming, when RW began seizing.  Mr. Vargas called 911, and an ambulance arrived and took RW to the local emergency room.  Dr. Eugene Duquette examined RW and ordered a CT scan.  The scan revealed an acute bilateral subdural hematoma (fresh blood around the brain) and a chronic bilateral subdural hematoma (older blood around the brain).  RW was life-flighted to the children's hospital in Colorado, where he underwent surgery to remove the blood from his brain.  Later MRI testing revealed a contusion (bruise) on the right temporal lobe of RW's brain, and an eye exam showed retinal hemorrhages in all four quadrants of RW's eyes.

[¶4]     Mr. Vargas was interviewed by a detective with the Casper Police Department.  During the interview, Mr. Vargas explained RW was in a baby swing in the living room when RW began "screaming bloody murder."  Mr. Vargas took RW out of the swing and walked him into the bedroom to change his diaper.  While changing his diaper, RW began seizing.  Mr. Vargas admitted he was "frustrated" and had "wanted out [of fostering children for] a long time."  He also admitted he "picked [RW] up [harder] than [he] should have" and bounced RW "aggressively."

[¶5]     The State charged Mr. Vargas with aggravated child abuse under Wyo. Stat. Ann. § 6-2-503(b)(i), (c).[1]  The primary issue at trial was the cause of RW's injuries.  To establish that Mr. Vargas caused RW's injuries, the State called Dr. Duquette and Dr. Coral Steffey, the child abuse pediatrician who evaluated RW at the children's hospital in Colorado, as witnesses.  Dr. Duquette testified that head injuries, like those suffered by RW, are most commonly caused by nonaccidental trauma.  Dr. Steffey told the jury that

---

[1] The State also charged Mr. Vargas with child abuse under Wyo. Stat. Ann. § 6-2-503(b)(i) for bruises found on RW's chest.  The jury found him not guilty of this charge, and it is not relevant to this appeal.

1

RW's injuries resulted from "child physical abuse, specifically abusive head trauma" which had occurred within a few hours of RW's arrival at the Casper emergency room. She also testified RW's injuries were caused by "[s]omething violent" and would not have been caused by normal caregiver activities like patting or gently bouncing RW. Mr. Vargas countered the testimony of these witnesses with the opinions of his medical expert, Dr. Joseph Scheller, who told the jury RW's acute subdural hematoma and retinal hemorrhages were caused by a preexisting condition called external hydrocephalus, excess fluid between the brain and the skull. According to Dr. Scheller, a child with external hydrocephalus may suffer a subdural hematoma even through benign activity, such as bouncing the child on one's knee. He also testified RW did not have a chronic subdural hematoma or a brain contusion. In rebuttal, Dr. Steffey stated external hydrocephalus could not have caused RW's injuries because RW did not have extra fluid in or around his brain; he experienced symptoms that he would not have suffered if he had hydrocephalus; and hydrocephalus does not cause retinal hemorrhages or explain the brain contusion.

[¶6]   The jury found Mr. Vargas guilty, and the district court sentenced him to 10-15 years in prison. Mr. Vargas timely filed a direct appeal (Appeal No. S-23-0127). While that appeal was pending, he filed a motion for a new trial under W.R.A.P. 21, claiming his trial counsel was ineffective. The court denied the motion, and Mr. Vargas timely appealed that denial (Appeal No. S-24-0018). We consolidated the appeals. Mr. Vargas does not raise any arguments concerning the district court's denial of his Rule 21 motion. His argument is limited to challenging the court's failure to provide his theory of defense jury instruction.

### STANDARD OF REVIEW

[¶7]         "A defendant has a due process right to a theory of defense instruction," and our review of a court's rejection of or failure to give such an instruction is de novo. *Kessel v. State*, 2023 WY 120, ¶ 13, 539 P.3d 406, 409 (Wyo. 2023) (quoting *Harnetty v. State*, 2019 WY 21, ¶ 27, 435 P.3d 368, 374 (Wyo. 2019)). "[A]n erroneous refusal of a theory of defense instruction is 'reversible error per se.'" *Kessel*, 2023 WY 120, ¶ 13, 539 P.3d at 409 (quoting *Black v. State*, 2020 WY 65, ¶ 22, 464 P.3d 574, 579 (Wyo. 2020)).

*Bolen v. State*, 2024 WY 48, ¶ 24, 547 P.3d 961, 966 (Wyo. 2024).

### DISCUSSION

[¶8]   At the informal jury instruction conference, Mr. Vargas asked the district court to provide the following "theory of defense" instruction to the jury:

If you find there is a reasonable explanation that the swelling and/or fluid in R.W.'s brain was caused by an underlying medical condition, then you must find the state did not meet its burden that [Mr. Vargas] inflicted serious bodily injury or physical injury to the head.

The court declined to provide the jury with this instruction because it was "not accurate as to the burden that is on the State as far as the elements that [it] need[s] to prove." Mr. Vargas then proposed a revised "theory of defense" jury instruction:

If you find there is a reasonable medical explanation for the alleged injuries, then you must find the state did not meet its burden that [Mr. Vargas] inflicted serious bodily injury or physical injury to the head.

The district court again declined to give the instruction but noted "nothing preclud[es] the defense from making that argument."

[¶9] Mr. Vargas argues the district court erred by failing to give his revised theory of defense jury instruction. He claims the issue at trial was not whether RW suffered from a subdural hematoma but whether the hematoma was the result of his accidental or non-accidental conduct. He asserts his theory of defense was "that if [his] actions, however benign, did cause RW's subdural hematoma said conduct was neither intentional nor reckless, but accidental due to . . . RW suffering from a pre-existing condition." He maintains this theory was supported by competent evidence, namely, Dr. Scheller's testimony that RW suffered from a preexisting medical condition called external hydrocephalus in which "a subdural hematoma can be caused, accidentally, through even benign activity."

[¶10] Mr. Vargas' theory of defense on appeal is slightly different than the theory he raised in the district court. As illustrated by his proposed theory of defense instructions, Mr. Vargas' defense at trial was that he did not cause RW's injuries but instead the injuries were caused by RW's preexisting medical condition. On appeal, he claims that even if his actions caused RW's injuries, he did not act intentionally or recklessly because even benign activity could cause RW's injuries given RW's preexisting medical condition. At trial, Mr. Vargas based his proposed jury instruction on the element of causation, while his appellate argument focuses on the element of intent. Normally we do not address issues raised for the first time on appeal, but we will do so in this case because the erroneous refusal of a theory of defense instruction is "reversible error per se." *Smith v. State*, 2021 WY 28, ¶¶ 50–51, 480 P.3d 532, 543 (Wyo. 2021) (addressing Ms. Smith's theory of defense raised for the first time on appeal because, *inter alia*, "the right to a theory of defense instruction is 'so important' that the erroneous refusal of one is reversible error per se" (quoting *Black v. State*, 2020 WY 65, ¶ 22, 464 P.3d 574, 579 (Wyo. 2020))); *Davis v. City of Cheyenne*,

2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004) (stating there are two exceptions to "[o]ur general rule . . . that we will not consider claims raised for the first time on appeal": "when the issue raises jurisdictional questions or it is of such a fundamental nature that it must be considered" (citing *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo. 2000))).

[¶11] "The law in Wyoming is well settled with respect to instructing a jury on a defendant's theory of the case." *Kessel v. State*, 2023 WY 120, ¶ 15, 539 P.3d 406, 409 (Wyo. 2023) (quoting *Nelson v. State*, 2010 WY 159, ¶ 14, 245 P.3d 282, 285 (Wyo. 2010)).

> A proper theory of defense instruction must "sufficiently inform the jury of the theory of defense," and there must be "competent evidence" to support that theory of defense. *Bruce v. State*, 2015 WY 46, ¶ 79, 346 P.3d 909, 932 (Wyo. 2015) (citation omitted). We review whether there is "competent" evidence to support a proposed theory of defense applying the same standard we apply to review sufficiency of the evidence appeals. *Id.* at ¶ 80, 346 P.3d at 932–33. A court may properly reject a proposed theory of defense instruction if it is "erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events." *Id.* at ¶ 79, 346 P.3d at 932. All of these questions assume that the theory at issue is, in fact, a recognized theory of defense. *See Bouwkamp* [*v. State*], 833 P.2d [486,] 490 [(Wyo. 1992)].

*Harnetty v. State*, 2019 WY 21, ¶ 29, 435 P.3d 368, 374 (Wyo. 2019).

[¶12] Mr. Vargas was charged with aggravated child abuse under Wyo. Stat. Ann. § 6-2-503(b)(i) and (c).[2] For a jury to convict him under the statute, the State had to prove that

---

[2] The statute provides:

> (b)  A person is guilty of child abuse, a felony punishable by imprisonment for not more than ten (10) years, if a person responsible for a child's welfare as defined in W.S. 14-3-202(a)(i) intentionally or recklessly inflicts upon a child under the age of eighteen (18) years:
>> (i)  Physical injury as defined in W.S. 14-3-202(a)(ii)(B), excluding reasonable corporal punishment;
>
> .  .  .
>
> (c)  Aggravated child abuse is a felony punishable by imprisonment for not more than twenty-five (25) years if in the course of committing the crime of child abuse, as defined in subsection . . . (b) of this section, the person intentionally or recklessly inflicts serious bodily injury upon the victim . . . .

4

Mr. Vargas intentionally or recklessly inflicted serious bodily injury upon RW. Mr. Vargas argues the State failed to satisfy its burden of proving the causation and intent elements of aggravated child abuse and asserts these failures rise to theories of defense. We do not recognize "failure of proof" or "claim of innocence" as a proper theory of defense. *Kessel*, ¶ 16, 539 P.3d at 410 ("Because the burden is on the State to prove every element of the crime charged, this Court does not recognize a 'failure of proof' defense, or a 'claim of innocence,' as a proper theory of defense."). Since neither of Mr. Vargas' proposed theories of defense is recognized as a theory of defense, the district court did not err by failing to instruct the jury on them. *Dennis v. State*, 2013 WY 67, ¶ 39, 302 P.3d 890, 898 (Wyo. 2013) ("Dennis' proposed 'theory of defense' was that the State simply had not met its burden of proving the specific intent element of aggravated burglary. Such a claim does not require a theory of defense instruction as it is more appropriately categorized as a claim of innocence."); *Chavez-Becerra v. State*, 924 P.2d 63, 67 (Wyo. 1996) ("Chavez-Becerra's claim of innocence is a failure of proof defense and, . . . therefore, . . . does not necessitate a special instruction."); *Bouwkamp v. State*, 833 P.2d 486, 490–91 (Wyo. 1992) (Bouwkamp's claim of innocence is not a defense recognized by statute or this Court that would merit a theory of defense instruction.).

[¶13] Mr. Vargas argues his revised theory of defense jury instruction correctly stated the law, was supported by competent evidence, and was "in fact, his entire theory of defense." Each of these arguments assumes a recognized theory of defense. *Harnetty*, ¶ 29, 435 P.3d at 374. "Fundamentally, [a proposed theory of defense] instruction must in the first instance [set forth] a proper theory of . . . defense[.] That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction."[3] *Kessel*, ¶ 15, 539 P.3d at 409 (quoting *Nelson*, ¶ 14, 245 P.3d at 286). Mr. Vargas' revised theory of defense instruction did not correspond to a proper theory of defense, and the district court did not err by refusing to provide it to the jury.

[¶14] Finally, Mr. Vargas maintains that if the district court found his theory of defense instruction deficient, the court had the obligation to fix the instruction and present it to the jury. The proposed instruction did not constitute a proper theory of defense, and the district court had no obligation to "fix" it. *Bouwkamp*, 833 P.2d at 491 ("[T]he trial court had no

Wyo. Stat. Ann. § 6-2-503(b)(i), (c) (Lexis Nexis 2023).

"A person responsible for a child's welfare" includes the child's foster parent. Wyo. Stat. Ann. § 14-3-202(a)(i). "'Physical injury' means any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition[.]" Wyo. Stat. Ann. § 14-3-202(a)(ii)(B). "Serious bodily injury" is defined as, among other things, "bodily injury which . . . [c]reates a substantial risk of death[.]" Wyo. Stat. Ann. § 6-1-104(a)(x)(A).

[3] The State argues that to satisfy the requirement of raising a proper theory of defense, the proposed jury instruction must normally relate to one of the fifty-five affirmative defenses listed in *Keser v. State*, 706 P.2d 263, 269 (Wyo. 1985). In *Keser*, the list is illustrative, not all of the defenses listed in *Keser* are recognized in Wyoming and the list is not exhaustive. *Id.* (noting "[p]ossible bars to conviction"). Proper theories of defense are not limited to those listed in *Keser*.

obligation to give a 'correct' version of the proposed instruction as it did not apprise the jury of a recognized theory of defense that would entitle Bouwkamp to an instruction.").[4]

## *CONCLUSION*

[¶15] Mr. Vargas' proposed theory of defense jury instruction was not a proper theory of defense instruction. The district court did not err by refusing to give it to the jury.

[¶16] We affirm.

---

[4] Mr. Vargas' "defenses" to the charge were adequately covered by the other instructions informing the jury of the State's burden of proof, and Mr. Vargas was permitted to and did vigorously present his "defenses" to the jury.